**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

Flexiworld Technologies, Inc.,

     *Plaintiff*

     v.

Indeed, Inc.,

     *Defendant.*

C.A. No. 1:24-cv-01254

**JURY TRIAL DEMANDED**

**ORAL ARGUMENT REQUESTED**

**DEFENDANT INDEED, INC.'S MOTION TO DISMISS
UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

# TABLE OF CONTENTS

I.    INTRODUCTION                                                                                          1

II.   BACKGROUND                                                                                            2

    A.    The Asserted Patents Present Several Claim Types But All Are Directed to the Same Abstract Idea
of Matchmaking on Computers                                                                                 3

    B.    Claim 38 of the '637 Patent is Representative                                                   4

    C.    The Asserted Patent Claims Use Only Generic Computer Components                                  5

III.  LEGAL STANDARD                                                                                        6

    A.    Patent Eligibility May Be Determined on a Rule 12(b)(6) Motion to Dismiss                        6

    B.    Patent Eligibility Is Determined Using a Two-Step Test Under *Alice*                            7

IV.   ARGUMENT                                                                                              8

    A.    Step One: The Claims Are Directed to the Abstract Idea of Matchmaking                           9

        1.    The claims are directed toward organizing human activity                                  9

        2.    The claims provide no improvement to computer technology                                  11

        3.    The claims are merely functional in nature                                                14

    B.    Step Two: The Claims Lack Any Inventive Concept                                                 16

V.    CONCLUSION                                                                                            20

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016) ............................................................................ 15

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
  109 F. Supp. 3d 916 (W.D. Tex. 2015), *aff'd*, 838 F.3d 1253 (Fed. Cir. 2016) ....... 7

*Alice Corp. Pty. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ........................................................... 7, 8, 9, 10, 16, 17, 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................. 6

*Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*,
  703 F. App'x 986 (Fed. Cir. 2017) ...................................................................... 19

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
  687 F.3d 1266 (Fed. Cir. 2012) ............................................................................ 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................. 6

*Bilski v. Kappos*,
  561 U.S. 593 (2010) ............................................................................................. 6

*Boom! Payments, Inc. v. Stripe, Inc.*,
  839 F. App'x 528 (Fed. Cir. 2021) ...................................................................... 13

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
  778 F. App'x 882 (Fed. Cir. 2019) ...................................................................... 12

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  No. CV MJG-17-3717, 2018 WL 1471685 (D. Md. Mar. 23, 2018), *aff'd*, 920 F.3d 759 (Fed. Cir. 2019) ........... 18

*Contiguity, LLC v. Conduent Bus. Servs. LLC*,
  No. W-23-CV-00038-XR, 2024 WL 252068 (W.D. Tex. Jan. 22, 2024) ............... 7

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
  880 F.3d 1356 (Fed. Cir. 2018) .......................................................................... 12

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012) ............................................................................ 6

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc*,
  758 F.3d 1344 (Fed. Cir. 2014) .......................................................................... 14

*EasyWeb Innovations, LLC v. Twitter, Inc.*,
   689 F.App'x 969 (Fed. Cir. 2017) .......... 13

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) .......... 15, 17

*Epic Tech., LLC v. Fitnow, Inc.*,
   151 F. Supp. 3d 1245 (D. Utah 2015) .......... 20

*FairWarning IP, LLC v. Iatric Sys. Inc.*,
   839 F.3d 1089 (Fed. Cir. 2016) .......... 7

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018) .......... 11

*Genetic Techs. Ltd. v. Merial LLC*,
   818 F.3d 1369 (Fed. Cir. 2016) .......... 7

*Ghaly Devices LLC v. Humor Rainbow, Inc.*,
   443 F. Supp. 3d 421 (S.D.N.Y. 2020) .......... 8, 11

*Health Discovery Corp. v. Intel Corp.*,
   577 F. Supp. 3d 570 (W.D. Tex. 2021) .......... 4, 7, 14

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
   50 F.4th 1371 (Fed. Cir. 2022) .......... 7

*Intell. Ventures I LLC v. Capital One Bank (U.S.A.).*,
   792 F.3d 1363 (Fed. Cir. 2014) .......... 10, 17, 18

*Intell. Ventures I LLC v. Erie Indem. Co.*,
   134 F. Supp. 3d 877 (W.D. Pa. 2015), *aff'd in part, vacated in part*, 850 F.3d 1315 (Fed. Cir. 2017)
   .......... 19, 20

*Intell. Ventures I LLC v. Erie Indem. Co.*,
   850 F.3d 1315 (Fed. Cir. 2017) .......... 12, 13, 18, 19

*Intell. Ventures I LLC v. Erie Indemnity Co.*,
   711 F. App'x 1012 (Fed. Cir. 2017) .......... 19

*Internet Pats. Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015) .......... 7, 8

*Interval Licensing LLC v. AOL, Inc.*,
   896 F.3d 1335 (Fed. Cir. 2018) .......... 14, 15, 16

*Jedi Techs., Inc. v. Spark Networks, Inc.*,
   No. CV 1:16-1055-GMS, 2017 WL 3315279 (D. Del. Aug. 3, 2017) .......... 2, 8, 10

*Location Based Servs., LLC v. Niantic, Inc.*,
   295 F. Supp. 3d 1031 (N.D. Cal. 2017), *aff'd*, 742 F. App'x 506 (Fed. Cir. 2018) .......... 18

*Miller Mendel, Inc. v. City of Anna, Texas*,
    107 F.4th 1345 (Fed. Cir. 2024), *cert. denied*, 2024 WL 4874683 (U.S. Nov. 25, 2024)    6

*In re Morsa*,
    809 F. App'x 913 (Fed. Cir. 2020)    10

*NetSoc, LLC v. Match Grp., LLC*,
    838 F. App'x 544 (Fed. Cir. 2020)    11

*Oasis Tooling, Inc. v. Siemens Indus. Software, Inc.*,
    No. CV 22-151-CJB, 2024 WL 3273539 (D. Del. July 2, 2024)    18

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015)    6

*PerformancePartners, LLC v. FlashParking, Inc.*,
    697 F. Supp. 3d 678 (W.D. Tex. 2023)    7

*Perry St. Software, Inc. v. Jedi Techs., Inc.*,
    548 F. Supp. 3d 418 (S.D.N.Y. 2021)    8, 11

*Personalized Media Commc'ns, LLC v. Amazon.Com, Inc.*,
    161 F. Supp. 3d 325 (D. Del. 2015), *aff'd sub nom*, *Personalized Media Commc'ns, L.L.C. v.*
    *Amazon.com Inc.*, 671 F. App'x 777 (Fed. Cir. 2016)    17

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
    No. 2:16-CV-0152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017)    20

*Pragmatus Telecom, LLC v. Genesys Telecommunications Lab'ys, Inc.*,
    114 F. Supp. 3d 192 (D. Del. 2015)    17

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
    696 F. App'x 1014 (Fed. Cir. 2017)    19

*Quad City Pat., LLC v. Zoosk, Inc.*,
    498 F. Supp. 3d 1178 (N.D. Cal. 2020)    1, 8, 12

*RDPA, LLC v. Geopath, Inc.*,
    543 F. Supp. 3d 4 (S.D.N.Y. 2021)    16, 17

*RFC Lenders of Texas, LLC v. Smart Chem. Sols., LLC*,
    No. W-23-CV-00832-XR, 2024 WL 4818807 (W.D. Tex. Aug. 6, 2024)    7

*In re Salwan*,
    681 F. App'x 938 (Fed. Cir. 2017)    19

*Savvy Dog Sys., LLC v. Pennsylvania Coin, LLC*,
    No. 2023-1073, 2024 WL 1208980 (Fed. Cir. Mar. 21, 2024)    18

*Simio, LLC v. FlexSim Software Prods., Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020)    7

*In re TLI Commc'ns LLC Pat. Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) ........................................................................... 12, 16

*Trinity Info Media, LLC v. Covalent, Inc.*,
    562 F. Supp. 3d 770 (C.D. Cal. 2021), *aff'd*, 72 F.4th 1355 (Fed. Cir. 2023) ........... 8, 11

*Two-Way Media Ltd. v. Comcast Cable Commc'ns*,
    874 F.3d 1329 (Fed. Cir. 2017) .................................................................................. 15

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ...................................................................................... 7

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
    916 F.3d 1363 (Fed. Cir. 2019) ............................................................................. 13, 14

*USC IP P'ship, L.P. v. Facebook, Inc.*,
    576 F. Supp. 3d 446 (W.D. Tex. 2021) *aff'd sub nom. USC IP P'ship, L.P. v. Meta Platforms, Inc.*, No.
    2022-1397, 2023 WL 5606977 (Fed. Cir. Aug. 30, 2023) ............................................ 14

*Walker Digital, LLC v. Google, Inc.*,
    66 F. Supp. 3d 501 (D. Del. 2014) ...................................................................... 8, 10, 11

*Wireless Discovery LLC v. Coffee Meets Bagel, Inc.*,
    654 F. Supp. 3d 347 (D. Del. 2023), *aff'd*, 2023-1583, 2024 WL 3336774 (Fed. Cir. July 9, 2024) 11, 14

*Wyeth v. Stone*,
    30 F. Cas. 723 (C.C.D. Mass. 1840) ........................................................................... 15

*Yu v. Apple Inc.*,
    1 F.4th 1040 (Fed. Cir. 2021) ...................................................................................... 7

**TABLE OF EXHIBIT**

| Ex. | Description |
|-----|-------------|
| A | Claim 38 Comparison Across Asserted Patents |

**TABLE OF ABBREVIATIONS**

| Abbreviation | Meaning |
|---|---|
| '637 patent | U.S. Reissue Patent No. RE46,637 |
| '066 patent | U.S. Reissue Patent No. RE48,066 |
| '176 patent | U.S. Reissue Patent No. RE49,176 |
| '088 patent | U.S. Reissue Patent No. RE48,088 |
| Dkt. | Docket |
| Flexiworld | Flexiworld Technologies, Inc. |
| Indeed | Indeed, Inc. |
| Asserted Patents | U.S. Patent No. RE46,637, U.S. Patent No. RE48,066, U.S. Patent No. RE49,176, and U.S. Patent No. RE48,088 |

## I.    INTRODUCTION

The Asserted Patents'[1] claims in this matter consist entirely of: stating an incredibly abstract idea, dressing it up with empty technological jargon, and implementing it with conventional computer components.  Stripped of their empty technical jargon, the Asserted Patents claim nothing more than the idea of collecting information about different parties, matching those parties based on the information collected, and facilitating communications between those parties. This kind of "matchmaking" is not new. It has existed for centuries—long before the Internet, and in myriad human activities, such as: matching buyers and sellers of goods and services; matching employers and employees; matching people for personal relationships; and matching news sources and interested readers.

It is that age-old idea of matchmaking that all four of Flexiworld's Asserted Patents claim. Although the claims of the Asserted Patents do not invoke the phrase "matchmaking" itself, they do recite the fundamental steps of just that: collecting information on parties, analyzing that information to match those parties, and facilitating communication between them.[2] While the claims recite performing these steps on a computer, they fail to provide any technical improvement to this basic process or address any unique technological problem to overcome when that process is performed on a computer.  Rather, the claims merely recite performing the age-old process using

---

[1] The patents asserted in this lawsuit are U.S. Reissue Patent Nos. RE46,637 ("the '637 patent"), RE48,066 ("the '066 patent"), RE49,176 ("the '176 patent"), and RE48,088 ("the '088 patent") (collectively, "the Asserted Patents").

[2] The Court should not be led astray by the Asserted Patents' repeated invocation of the phrase "data mining." *See* Dkt. 1 (Complaint), ¶¶ 22, 28, 40, including in the title of the patents.  Although the claims do reference "data mining," they actually offer nothing on "data mining" other than a general idea that data is being "mined," *i.e.* collected, as part of the process of matching users based on that data. *See* '637 patent, Claim 38. "Data mining" is thus merely invoked in its general, widely-used sense, without any innovation.  *Quad City Pat., LLC v. Zoosk, Inc.*, 498 F. Supp. 3d 1178, 1186 (N.D. Cal. 2020).

generic computer terminology.

Courts have repeatedly held that the abstract idea of matchmaking with no technical improvement is not patent eligible under 35 U.S.C. § 101 based on the Supreme Court's *Alice* analysis. *See, e.g.*, *Jedi Techs., Inc. v. Spark Networks, Inc*., No. CV 1:16-1055-GMS, 2017 WL 3315279, at *7 (D. Del. Aug. 3, 2017) ("The court finds that the claims of the asserted patent are drawn to the abstract idea of matching people based on criteria such as personality traits or location. . . The concept of matchmaking is certainly not novel and has been performed by humans for a very long time. This strikes the court as the type of concept that falls within the proscriptions of § 101."); *see also, infra,* Section IV.

The Asserted Patents are no different. The patents fail the Supreme Court's *Alice* test and are patent ineligible. Because eligibility is a threshold issue, the Complaint should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6) at the pleading stage to avoid extended litigation over patents that are doomed from the beginning.

## II.    BACKGROUND

Flexiworld Technologies, Inc. ("Flexiworld") filed this lawsuit seeking past royalties on four expired reissue patents[3] that are all based on Application No. 09/947,116 filed on September 4, 2001.  *See* Dkt. 1 (Complaint), ¶¶ 23, 29, 35, 41.  Claims 1-37 in each Asserted Patent are not operative because they were canceled during reissue.  The Asserted Patents' operative claims all relate to the broad concept of matchmaking on a computer, and they are all nearly identical, with only extremely minor word changes.  The four Counts in the Complaint each asserts infringement of an Asserted Patent that is directed to an ineligible abstract idea.

---

[3] Reissue patents correct errors in earlier-issued patents.  Here, all four reissue patents canceled claims 1-37 from U.S. Patent No. 7,099,304, and added claims 38-77 to the '637 patent, claims 38-58 to the '066 patent, claims 38-61 to the '176 patent, and claims 38-58 of the '088 patent.

2

**A.** **The Asserted Patents Present Several Claim Types But All Are Directed to the Same Abstract Idea of Matchmaking on Computers**

The four Asserted Patents include several types of patent claims: method claims, apparatus claims, system claims, and storage medium claims. *See*, *e.g.*, '637 patent at Claims 38-46, 59-62, 70-72 (method claims); *id.* at Claims 47-52, 63-66, 73-75 (system and apparatus claims)*; id.* at Claims 53-58, 67-69, 76-77 (computer-readable medium claims). The method claims recite steps performed over the Internet for connecting two matched parties for communication, including using a "reference code" to match the parties. '637 patent, Claims 38-46, 59-62, 70-72; '066 patent, Claims 38-43; '088 patent, Claims 38-45; '176 patent, Claims 38-46, 60. The system and apparatus claims recite the steps as functions performed on generic computer components. '637 patent, Claims 47-52, 63-66, 73-75; '066 patent, Claims 47-52; '088 patent, Claims 45-52; '176 patent, Claims 46-61. Finally, the storage medium claims recite the steps performed by generic software on a generic computer storage device. '637 patent, Claims 53-58, 67-69, 76-7; '066 patent, Claims 53-58; '088 patent, Claims 52-58; '176 patent, Claims 52-58. Because the system, apparatus, and storage medium claims recite the steps of the method claims, the method claims are representative of all claim types.

All claim types are directed towards the abstract idea of matchmaking on a computer by reciting limitations related to "receiving" and "obtaining" data about the parties, "verifying" the parties, "generating" a "reference code" (*e.g.*, a number or name for tracking purposes) to match the parties, and "opening a channel for communication" between the parties through the use of generic computer components. *See, e.g.*, Asserted Patents at claim 38. The Asserted Patents describe providing services for "connecting people" over "the Internet" to "mak[e] transactions" to achieve its matchmaking goal. *See, e.g.,* '176 and '088 patents at Title; Asserted Patents at Abstract.

3

**B.    Claim 38 of the '637 Patent is Representative**

Claim 38 of the '637 patent is representative because it mirrors Claim 38 of all the other Asserted Patents with only minor rearrangements of the same limitations across the claims.[4] *See* Ex. A (Claim 38 Comparison Across Asserted Patents); *Health Discovery Corp. v. Intel Corp.,* 577 F. Supp. 3d 570, 577 (W.D. Tex. 2021) (district courts can "analyze representative claims for patent eligibility where all of the asserted and challenged claims are substantially similar and linked to the same purported abstract idea").

For example, the only difference in the preamble of Claims 38 of the '637 and '066 patents is that one states "data mining user information associated with" and the other states "based, at least in part, on data mining user information." As another example, the only difference in the first limitations of Claims 38 of the '637 and '066 patents is shown in red here:

> obtaining, by a controller, one or more transaction specifications over the Internet associated with the second party, the one or more transaction specifications specifying one or more of product information, service information, intellectual property information, content information, interest information, qualification information, or characteristic information, individually or in any combination, related to one or more transactions associated with the second party over the Internet;

The '637 specification explains that it "facilitate[s] users posting information, connecting to other users, and making transactions" for the goal of matchmaking "over the Internet." '637 patent at Abstract. The other Asserted Patents parrot the same goal, with claim language that is directed to the same abstract idea. '066 patent at Abstract (same); '176 patent at Abstract (same); '088 patent at Abstract ("facilitate a user . . . connecting to other users over the Internet" and

---

[4] *Compare* '637 patent, Claims 59, 61-62, 64-66, 68-69 *with* '088 patent, Claims 38, 40-41, 46-48, 53-54 (identical or close to identical claims); *compare* '637 patent, Claims 38, 41, 42, 43, 46, 48, 52, *with* '176 patent, Claims 38, 41, 42, 43, 45, 47, 51 (same); *compare* '637 patent, Claims 38, 39, 41-43, 45-48, 50, 52-53, 56-57 *with* '066 patent, Claims 38, 39, 41-43, 45-48, 50, 52-53, 56-57 (same).

"collect[ing] or obtain[ing] data").

### C.    The Asserted Patent Claims Use Only Generic Computer Components

The Asserted Patents achieve their objective of matchmaking over the Internet by relying on the use of preexisting technological components, including, for example, the "Internet," a "first station" (*e.g.*, a computer), a "second station" (*e.g.*, a second computer), a "packet data network" (*e.g.* the Internet; '637 Patent 11:45-50), and a "controller" (*e.g.* a computer; *see id.* at 11:37-39, 19:51-62). *See* Asserted Patents, Claim 38. These claims recite generic computer components with commonly used computer terminology. Even where Claim 38 refers to computer terminology like "data mining," this refers to nothing more than just collecting data as part of the matchmaking process. *See, e.g.*, '637 patent at claim 38.

Other Asserted Patent claims similarly achieve the same objective of collecting and then matchmaking users by relying on the use of both the same generic computer components from Claim 38 and a few additional generic computer components, such as a "channel for communication," "data storage unit," "processor," "storage medium," "Internet-enabled device," "recording medium," "display screen," and "software program." *See, e.g.*, '637 patent, Claims 45, 47, 53, 59, 63, 67, 70, 73, 76; '066 patent, Claims 39, 47-58; '176 patent, Claims 40, 46-52, 54-55, 57-60; '088 patent, Claims 39, 41, 43, 45-58. These well-known computer terminologies simply correlate to a method of communication, data storage systems, computer screens, and software—all of which are conventional computer components that are part of the generic "internet-enabled devices" (e.g. "desktop or laptop personal computers" and "smart phones with Internet") being contemplated for use in the Asserted Patents. '637 patent at 10:45-49; *see also id.* at Abstract; *id.* at 7:49-53 (describing "voice communication" as a channel of communication); *id.* at 10:49-50; *id.* at 19:50-62 (describing "controller unit" as including a

"processor 82 (e.g. a microprocessor[])," "memory," "operating system," "applications," "data storage," and various other computer components); *id.* at 20:19-21 (describing "storage" component as a database).

Throughout, the claims detailed in the '637 patent and in the Asserted Patents more generally do not include any specific technological improvements to, or any unconventional configuration of, any of these components listed above. Nor do they purport to have altered the method of collecting, sharing, matching, and facilitating information between parties in a meaningfully novel way.

## III.    LEGAL STANDARD

### A.    Patent Eligibility May Be Determined on a Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009). To survive dismissal, the complaint must state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint for patent infringement must be based on a patent-eligible patent. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 n.3 (Fed. Cir. 2012). Patent eligibility is a legal question that ordinarily does not involve underlying facts and therefore, patent eligibility "may be, and frequently has been," determined on a Rule 12(b)(6) motion. *Miller Mendel, Inc. v. City of Anna, Texas*, 107 F.4th 1345, 1350 (Fed. Cir. 2024) (citation omitted), *cert. denied*, 2024 WL 4874683 (U.S. Nov. 25, 2024). Importantly, addressing patent eligibility at the pleading stage "conserves scarce judicial resources and spares litigants the staggering costs associated with discovery and protracted claim construction litigation." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015).

Patentees cannot avoid dismissal at this stage by arguing that claim construction is needed

or by making general allegations regarding innovativeness of the claims. That is because claim construction of the patent claim terms is not required to find a patent ineligible. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012); *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1374 (Fed. Cir. 2016) (maintaining that "claim construction is not an inviolable prerequisite to a validity determination under § 101") (internal citation omitted). Further, a court need not consider conclusory statements or legal conclusions, such as a "patent owner's conclusory allegations of inventiveness" at the motion to dismiss stage. *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1379 (Fed. Cir. 2022); *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020).

Courts in this district dismiss complaints on Rule 12(b)(6) when the asserted patent(s) claims are ineligible. *See, e.g.*, *RFC Lenders of Texas, LLC v. Smart Chem. Sols., LLC*, No. W-23-CV-00832-XR, 2024 WL 4818807 (W.D. Tex. Aug. 6, 2024); *Contiguity, LLC v. Conduent Bus. Servs. LLC*, No. W-23-CV-00038-XR, 2024 WL 252068 (W.D. Tex. Jan. 22, 2024); *Health Discovery*, 577 F. Supp. 3d at 570; *PerformancePartners, LLC v. FlashParking, Inc.*, 697 F. Supp. 3d 678 (W.D. Tex. 2023); *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 109 F. Supp. 3d 916 (W.D. Tex. 2015), *aff'd*, 838 F.3d 1253 (Fed. Cir. 2016). The Federal Circuit encourages early dismissal to weed out bad patents from the outset. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014); *Yu v. Apple Inc.*, 1 F.4th 1040, 1046 (Fed. Cir. 2021); *FairWarning IP, LLC v. Iatric Sys. Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016).

## B.    Patent Eligibility Is Determined Using a Two-Step Test Under *Alice*

To evaluate patent ineligibility under Section 101, courts engage in a two-step inquiry. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217-218 (2014). First, the court assesses "whether the claims at issue are directed" toward a "patent-ineligible concept[]," such as an

abstract idea. *Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346-48 (Fed. Cir. 2015). Abstract ideas include:

- Matchmaking: *Jedi Techs.,* 2017 WL 3315279, at *7; *Walker Digital, LLC v. Google, Inc.*, 66 F. Supp. 3d 501, 508–09 (D. Del. 2014); *Trinity Info Media, LLC v. Covalent, Inc.*, 562 F. Supp. 3d 770 (C.D. Cal. 2021), *aff'd*, 72 F.4th 1355 (Fed. Cir. 2023); *Ghaly Devices LLC v. Humor Rainbow, Inc.*, 443 F. Supp. 3d 421, 429 (S.D.N.Y. 2020);

- Finding and introducing compatible individuals: *Perry St. Software, Inc. v. Jedi Techs., Inc.*, 548 F. Supp. 3d 418, 431 (S.D.N.Y. 2021); *Ghaly Devices*, 443 F. Supp. 3d at 429;

- Data mining: *Quad City*, 498 F. Supp. 3d at 1186.

If the patent claims are directed toward an abstract idea, then in step two, the court asks whether the relevant claims contain an "inventive concept," or "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217-218. Activities which are "well-understood, routine, [or] conventional" are not sufficient in and of themselves to confer the required inventive concept. *See id.* at 225.

## IV.    ARGUMENT

The Asserted Patents fail both steps of the *Alice* inquiry. **First**, the claims are directed to the abstract idea of matchmaking, with no purported advancement or technological improvement to the matchmaking process. Courts have repeatedly held that claims are abstract when directed to the generic idea of matchmaking. *See, e.g.*, *Jedi Techs.,* 2017 WL 3315279, at *7; *Walker Digital*, 66 F. Supp. 3d at 508–09, 513; *Trinity Info Media*, 562 F. Supp. 3d at 782, 778; *Ghaly Devices*, 443 F. Supp. 3d at 429. **Second**, the claims lack any inventive concept because they recite nothing more than generic computer components. Because the Asserted Patents fail both

8

steps, the Complaint should be dismissed with prejudice under Rule 12(b)(6).

**A.    Step One: The Claims Are Directed to the Abstract Idea of Matchmaking**

To determine whether a patent's claims are directed to an abstract idea, courts consider several factors, such as whether the claims (1) organize human activity; (2) describe computerized processes that could be performed mentally or with a pen and paper and do not represent a computer innovation; and (3) recite purely functional, result-oriented language (i.e., explaining a result without specifying how that result is achieved). While not all of these factors need to be met, the claims here satisfy all three, leaving no doubt that they are directed to an abstract idea.

**1.    The claims are directed toward organizing human activity**

The Supreme Court and the Federal Circuit have repeatedly affirmed that organizing human activity is an abstract idea. The Asserted Patents claims are all directed to matchmaking, a way of organizing human activity, that falls squarely into this category.  Courts have clearly held matchmaking to be a way of human organization that is an abstract idea.

The Supreme Court in *Alice* invalidated claims directed to facilitating an exchange of obligations between parties to a financial transaction, holding that such claims were directed to organizing human activity and thus an abstract idea.  *See Alice*, 573 U.S. at 214 n.2 (describing Claim 33 in *Alice* as representative of the other method claims at issue and reciting a "method of exchanging obligations as between parties" that is facilitated through a third-party "exchange institution"). In so holding, the *Alice* Court emphasized that the abstract idea of facilitating the exchange of information is "a fundamental economic practice long prevalent in our system of commerce" that operates as "a building block of the modern economy." *Id.* at 219-220.  And the Federal Circuit has found that even "customizing information based on [] information known about the user" and other types of data collected to organize human transactions are still "directed

to abstract ideas" and, therefore, not patentable. *Intell. Ventures I LLC v. Capital One Bank (U.S.A.).,* 792 F.3d 1363, 1367-68 (Fed. Cir. 2014); *In re Morsa*, 809 F. App'x 913 (Fed. Cir. 2020).

Like in *Alice*, the Asserted Patent claims are directed towards "'a fundamental economic practice long prevalent in our system of commerce.'" *Alice,* 573 U.S. at 219 (citation omitted). Representative Claim 38 of the '637 patent recites a process to connect one party with a second party by "obtaining" information about the second party, "mining" information about that party, matching the two parties, and assigning a code to keep track of the match. This is nothing more than matchmaking, a fundamental human activity, particularly in business transactions. The Federal Circuit recognized this in *Morsa*. In that case, the Federal Circuit held that claims related to targeted advertising were directed to the abstract idea and fundamental practice of organizing human activity, as they described a process for matching users to advertisers based on information collected about the users. *Morsa*, 809 F. App'x at 917.

Other courts have likewise held that claims reciting matchmaking activities of the very type in the Asserted Patents are directed to abstract ideas and not patent eligible. *See, e.g., Jedi Techs*, 2017 WL 3315279, at *7 ("matching people based on criteria such as personality traits or location" directed to an abstract idea"); *Walker Digital*, 66 F. Supp. 3d at 508–09 (claims "recite a generic headhunting or matchmaking request by two parties. There is nothing 'inventive' about any of the listed rules or any other steps of the claims, including the order in which they are to be performed. Instead, the claim limitations simply lay out an interaction whereby two parties share a series of demands with a third party, where one of the demands of both parties is that the parties' identities remain anonymous unless and until there is at least some overlap between the demands and requirements of the two parties."); *id.* at 513 ("steps add nothing inventive to the core concept

10

of anonymously exchanging information about people, a practice that is described in the patent's specification as having long been practiced by human headhunters and matchmakers"); *Trinity Info,* 562 F. Supp. 3d at 770 (claims "directed to patent-ineligible abstract idea of matching users who gave corresponding answers to a question"); *Ghaly Devices*, 443 F. Supp. 3d at 429 (patent claiming process for matching different users on dating app is drawn to abstract idea of "human compatibility and matchmaking"); *NetSoc, LLC v. Match Grp., LLC,* 838 F. App'x 544, 548 (Fed. Cir. 2020) (claims "directed to the abstract idea of automating the conventional establishment of social networks to allow humans to exchange information and form relationships."); *Wireless Discovery LLC v. Coffee Meets Bagel, Inc*., 654 F. Supp. 3d 347, 356-57 (D. Del. 2023) (claims directed to the abstract idea of simply "exchanging information about people based on their location and membership in an organization"), *aff'd*, 2023-1583, 2024 WL 3336774 (Fed. Cir. July 9, 2024); *Perry St. Software,* 548 F. Supp. 3d at 431 ("[the] claims are clearly directed toward the abstract idea of finding and introducing individuals to others with whom they might be compatible," which is itself a patent-ineligible concept).

Like the claims in these cases, the Asserted Patents are directed to an abstract idea and therefore fail the first step of the *Alice* test.

2.    **The claims provide no improvement to computer technology**

The Asserted Patents also fail Step 1 for an additional reason: they offer no improvement in computer technology. When examining patent claims with computer-related claim elements, courts look to see whether the claims are directed to an improvement to computers as part of the Step 1 analysis. *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). While claims directed to "a specific improvement in the capabilities of computing devices" may pass muster under Step 1, claims that simply outline a "process that qualifies as an abstract idea for

which computers are invoked merely as a tool" do not. *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361–62 (Fed. Cir. 2018); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 890 (Fed. Cir. 2019).

The claims at issue here do not improve computer technology in any way. The claims simply rely on generic computer elements to achieve the abstract idea of matchmaking. For example, the Representative Claim ('637 patent Claim 38) refers to a controller, but that is just a generic term for a computer that controls an activity, a common operation for computers as the patent itself acknowledges. '637 patent at Claim 38, 9:37-41 and 11:37-39. Nowhere does the patent build upon the controller units in any unconventional or unexpected way. As courts have made clear, reciting "vague, functional descriptions of server components," such as "control unit," is "insufficient" to transform "the abstract idea into a patent-eligible invention." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016).

Adding the phrase "data mining" to some of the claims also does not make them any less abstract. As explained above, "data mining" is just another name for collecting information to analyze it for further use in an activity (here, matchmaking). And, data mining alone has been held to be an abstract idea. *Quad City*, 498 F. Supp. 3d at 1186 ("a particular data mining technique" is just "'analyzing information by steps people go through in their minds, or by mathematical algorithms, [and thus,] without more,' is an abstract idea") (citation omitted). While the Asserted Patents' claims refer to obtaining data through data mining, that does not alter the abstract nature of the claims. Claims directed to obtaining data through data mining are still drawn to an abstract idea, as the Federal Circuit recognized in *Intellectual Ventures*. In that case, the Federal Circuit found claims directed to "creating an index and using that index to search for and retrieve data" were directed to an abstract idea and therefore patent-ineligible. *Intell.*

12

*Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017). Here, the claims similarly are "obtaining" data through "data mining."

Other terms used in Claim 38 of the '637 patent, such as "Internet," a "first station," a "second station," and a "packet data network," are also not described in non-conventional ways. There is no novelty in using a "packet data network" (*e.g.*, the Internet) to collect, share, match, and facilitate information; nor is there any non-conventional use of a first or second station or computer servers to do the same as the common specification to all four Asserted Patents explains. *See* '637 patent, Claim 38, Fig. 1; 10:61-65 (packet data network is generally the Internet). The other generic computer components in the claims of the Asserted Patents do not provide an inventive step either. *See, infra,* pp. 17-20.

The Asserted Patent claims that recite creating a "reference code" based on information "obtained" or "min[ed]" demonstrate that the claims are directed at nothing more than an abstract idea. In *Boom*, the Federal Circuit stated that "use of an identification code known only to the buyer and the third party to verify a transaction could be performed just as readily without the use of computers and cannot be said to be a 'technological' solution that improves the functioning of a computer system," and thus found "that, at most, the use of an identification code does nothing more than overlay a second layer of abstraction—specifically, identity authentication—on the [] procedure described by the claims." *Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528, 532 (Fed. Cir. 2021).

The Asserted Patent claims also refer to receiving data and displaying data, but those are abstract concepts as well. *EasyWeb Innovations, LLC v. Twitter, Inc.*, 689 F.App'x 969, 971 (Fed. Cir. 2017) (claims relating to "receiving, authenticating, and publishing data" are abstract ideas); *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1366, 1368 (Fed. Cir.

2019) ("collecting, analyzing, manipulating, and displaying data" are abstract ideas); *USC IP P'ship, L.P. v. Facebook, Inc.*, 576 F. Supp. 3d 446, 451 (W.D. Tex. 2021) *aff'd sub nom. USC IP P'ship, L.P. v. Meta Platforms, Inc.*, No. 2022-1397, 2023 WL 5606977 (Fed. Cir. Aug. 30, 2023) ("collecting, analyzing and using intent data" is not patent-eligible); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc*, 758 F.3d 1344, 1350–51 (Fed. Cir. 2014) (claims reciting "a process of organizing information through mathematical correlations" are not patent-eligible).

Finally, the exchange of information in the claims is also an abstract idea. *Wireless Discovery,* 654 F. Supp. 3d at 356-57 (claim is "directed to the abstract idea of simply exchanging information about people based on their location and membership in an organization") (internal quotations omitted); *Health Discovery*, 577 F. Supp. 3d at 574 (claims "directed to performing feature ranking, selection, and reduction" for pattern recognition purposes are not patent-eligible).

In sum, the Asserted Patents use standard and generic communication devices, such as computers and servers, the Internet, and other component parts, as mere tools to enable already-known activities. *See, infra,* pp. 17-20. Because the Asserted Patents do not improve computer technology, they are directed to an abstract idea for this additional reason.

**3.    The claims are merely functional in nature**

A third factor courts look at in assessing whether claims are directed to an abstract idea is whether they are purely functional in nature.  Claims that are result-oriented, reciting a desired result without specifying how that result is achieved, are directed to an abstract idea. The Asserted Patent claims do just that—using functional result-oriented language.

Claims that ultimately "[fail] to recite a practical way of applying an underlying idea . . . [and] instead were drafted in such a result-oriented way that they amounted to encompassing 'the

principle in the abstract' no matter how implemented" are not patent-eligible. *Interval Licensing LLC v. AOL, Inc*., 896 F.3d 1335, 1343 (Fed. Cir. 2018) (citing, *e.g.*, *Wyeth v. Stone,* 30 F. Cas. 723, 727 (C.C.D. Mass. 1840)). Time and time again, the "[e]ssentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101." *Elec. Power Grp., LLC v. Alstom S.A*., 830 F.3d 1350, 1356 (Fed. Cir. 2016); *see also Affinity Labs of Texas, LLC v. Amazon.com Inc.,* 838 F.3d 1266, 1269 (Fed. Cir. 2016) ("The purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea.").  The Federal Circuit has held ineligible claims that "requir[e] the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but [do] not sufficiently describe how to achieve these results in a non-abstract way." *Two-Way Media Ltd. v. Comcast Cable Commc'ns*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).

Just as in *Two-Way Media,* the claims here do not describe how to achieve the claimed steps.  Specifically, the Representative Claim in '637 patent, repeatedly emphasizes that it is simply "obtaining" and "mining" information, and then "generating" and "supplying" a reference code based on the collected information through use of a "controller." '637 patent, Claim 38. That claim recites generic steps ("obtaining," "mining," "generating," "supplying," etc.) but does not describe specifics on *how* those steps are achieved.  For example, there is no explanation or inventive aspect to how data is collected; the claims do not even purport to offer an inventive method of "mining" information.  As another example, there is nothing inventive about "generating" a "reference code" to match users; the claims, again, offer no advancement to such a step.  Even further, the Representative Claim (and all other claims) describe its component parts in a purely functional way, including by adding no more to the "controller" than the performance of the method steps that are well-known.  The other Asserted Patents suffer from the same

deficiencies, adding no more to "data storage unit," "processor," "storage medium," "Internet-enabled device," "recording medium," "display screen," and "software program." *See, infra*, pp. 17-20; *see also* '066 patent, Claims 39, 47, 53, 55, 56; '176 patent, Claims 45, 46, 48, 52, 54, 57, 58; '088 patent, Claims 46, 51, 52, 54, 55.

The Asserted Patents' repeated "fail[ures] to provide any technical details" for its claims make it abundantly evident that these technological components are "merely a conduit for the abstract idea." *TLI Commc'ns*, 823 F.3d at 612. Put differently, the Asserted Patent claims "amount[] to" broadly "encompassing" the entire "'principle in the abstract' no matter how implemented." *Interval Licensing*, 896 F.3d at 1343.

Thus, all of the claims of the Asserted Patents are directed to an abstract idea. Having failed the first step of the *Alice* test, the analysis proceeds to the second step.

### B.  Step Two: The Claims Lack Any Inventive Concept

Because the claims of the Asserted Patents fail Step 1, the claims can only survive if in Step 2 the Court finds an inventive concept. *Alice*, 573 U.S. at 217-218. These claims fail to survive Step 2. An inventive concept must be "significantly more" than an abstract idea. *Id*. It is not enough to offer an "instruction" to implement or apply the abstract idea on a computer, nor is it enough to "[s]imply append[] conventional steps, specified at a high level of generality." *Id.* at 222. The *Alice* Court made abundantly clear that simply reciting the use of "some unspecified, generic computer is *not 'enough'* to transform the abstract idea into a patent-eligible invention." *Id.* at 208 (emphasis added).

The Federal Circuit has further clarified that "invocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept in the application of an abstract idea." *Elec. Power Grp.*, 830 F.3d at 1355; *RDPA, LLC v. Geopath,*

*Inc.*, 543 F. Supp. 3d 4, 22 (S.D.N.Y. 2021) (citing *Elec. Power Grp.* for the proposition that, "merely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes, whose implicit exclusion from § 101 undergirds the information based-category of abstract ideas").  None of the computer terms—not the structures, the steps or the data recited—in the claims provide an inventive concept.

Specifically, as discussed above, the terms "controller," "Internet," "first station," "second station," "packet data network," "channel of communication," "data storage unit," "processor," "storage medium," "Internet-enabled device," "recording medium," "display screen," and "software program" are well known as the patent specifications confirm. *See, e.g.*, '637 patent, 1:43-2:10; 2:20-40, 2:58-3:2, 7:49-53, 10:60-67, 11:60-12:12, 19:51-54, 22:17-20; '066 patent, 10:63-64, 11:1-3, 18:36-41; 19:54-56, 22:19-22; '176 patent, 11:3-10, 19:62-65, 22:27-30; '088 patent, 9:51-58, 10:64-11:5, 21:6-10, 22:21-24.

All of these components are simply generic computer components, and courts have found so repeatedly.  *See, e.g.*, *Personalized Media Commc'ns, LLC v. Amazon.Com, Inc.*, 161 F. Supp. 3d 325, 338 (D. Del. 2015), *aff'd sub nom*, *Personalized Media Commc'ns, L.L.C. v. Amazon.com Inc.*, 671 F. App'x 777 (Fed. Cir. 2016) ( "The network of transmitter and receiver **stations** is a generic computer component.") (emphasis added); *Pragmatus Telecom, LLC v. Genesys Telecommunications Lab'ys, Inc.*, 114 F. Supp. 3d 192, 203 (D. Del. 2015) ("These generic computer and technological components—'automated communication distribution system,' 'terminal,' 'user interface,' . . . 'over a **network**,' 'data'—do not individually or together transform this abstract idea into something sufficient for patentability.") (emphasis added); *Intell. Ventures I*, 792 F.3d at 1368 ("The recited elements, e.g., a database, a user profile . . . and a

**communication medium**, are all generic computer elements.") (emphasis added); *Alice*, 573 U.S. at 226 ("But what petitioner characterizes as specific hardware—a 'data **processing** system' with a "communications **controller**" and '**data storage** unit,' . . . is purely functional and generic. Nearly every computer will include a 'communications **controller'** and '**data storage** unit' capable of performing the basic calculation, storage, and transmission functions required by the method claims.") (emphasis added); *Intell. Ventures I*, 850 F.3d at 1341 ("Rather, the claims recite both a generic computer element—a **processor**—and a series of generic computer 'components' that merely restate their individual functions—i.e., organizing, mapping, identifying, defining, detecting, and modifying.") (emphasis added); *Oasis Tooling, Inc. v. Siemens Indus. Software, Inc.*, No. CV 22-151-CJB, 2024 WL 3273539, at *8 (D. Del. July 2, 2024) ("The specification additionally tells us that only generic computer components (i.e., 'a **processor** and memory' and 'a **computer readable storage medium** that stores **program** code for carrying out' the methods) are required to carry out these steps") (emphasis added); *ChargePoint, Inc. v. SemaConnect, Inc.*, No. CV MJG-17-3717, 2018 WL 1471685, at *9 (D. Md. Mar. 23, 2018), *aff'd*, 920 F.3d 759 (Fed. Cir. 2019) ("A **controller** and control device are merely broad recitations of generic computing components that can 'cause' something to occur"; "'a **recordable medium**' . . . merely adds hardware . . . adding nothing of substance to the patent.") (emphasis added); *Location Based Servs., LLC v. Niantic, Inc.*, 295 F. Supp. 3d 1031, 1057 (N.D. Cal. 2017), *aff'd*, 742 F. App'x 506 (Fed. Cir. 2018); *Savvy Dog Sys., LLC v. Pennsylvania Coin, LLC*, No. 2023-1073, 2024 WL 1208980, at *4 (Fed. Cir. Mar. 21, 2024) ("all that remain are generic and conventional computer components (e.g., a gaming terminal and touch **screen display**) that are used in a routine and conventional way.") (emphasis added); *Intell. Ventures I*, 850 F.3d at 1331 ("The claimed mobile interface is so lacking in

implementation details that it amounts to merely a generic component (software, hardware, or firmware)").

In fact, the claims of the Asserted Patents add nothing more to these generic computer components, and are conspicuously silent as to anything "more" than what these components are known for. For example, the '066 patent describes a "channel for communication" but then just claims use of that communication channel for connecting the parties in standard ways. '066 Patent at Claim 38; *Id.* at 7:49-53. Further, while some of the Asserted Patent claims refer to a "packet data network," the specification explains that the network is a collection of "servers."[5] But the Federal Circuit has also held that servers are generic computer components that fail to offer an inventive concept. *See, e.g.*, *Intell. Ventures I LLC v. Erie Indemnity Co*., 711 F. App'x 1012, 1018–19 (Fed. Cir. 2017) (the specification "never suggests that any of these computer components," such as a "server," "are non-generic"); *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017–18 (Fed. Cir. 2017) ("a server" is an "indisputably generic computer component[]"); *Audatex N. Am., Inc. v. Mitchell Int'l, Inc*., 703 F. App'x 986, 990 (Fed. Cir. 2017) (referring to a "server" as a "generic computer component[]"); *In re Salwan*, 681 F. App'x 938, 939 (Fed. Cir. 2017) (referring to "generic" computer components, including a "server").

Moreover, the steps recited in the Asserted Claims are not inventive concepts. The claims at issue simply recite "obtaining," "data mining," "transmit[ting]," "generating," "receiving," and "supplying" data between a first station and second station to share information. *See, e.g.*, Asserted Patents, Claim 38; *Intell. Ventures I LLC v. Erie Indem. Co.*, 134 F. Supp. 3d 877, 925 (W.D. Pa. 2015), *aff'd in part, vacated in part*, 850 F.3d 1315 (Fed. Cir. 2017) (sending and

---

[5] "The transaction specification(s) 32 preferably are obtained through the packet data network 18. More specifically, the transaction specifications preferably are obtained via servers 20-22." '637 patent at 14:37-40.

receiving data fail to provide an inventive concept).

Finally, the information and data collected and shared is not unique or innovative. *See* '637 patent, claim 38 (referring to collecting generic "product information, service information, [etc.]"). Rather, this data is just like any other type of data that is otherwise collected, shared, matched, and facilitated on generic computer components. *Epic Tech., LLC v. Fitnow, Inc.*, 151 F. Supp. 3d 1245, 1250 (D. Utah 2015) (finding claims directed towards "collecting product information via a bar code, recording the data, organizing the data, and displaying it to a user" to be patent ineligible); *Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-CV-0152-JRG-RSP, 2017 WL 1065938, at *18 (E.D. Tex. Mar. 8, 2017), *adopted*, 2017 WL 1177988 (E.D. Tex. Mar. 30, 2017) (obtaining client and financial product information and decision criteria fails to provide an inventive step).

In sum, nothing in the claims of the Asserted Patents provide an inventive concept required by Step 2 of the *Alice* analysis. Having failed Step 2, all of the Asserted Patent claims are patent ineligible under Section 101.

## V.    CONCLUSION

All four Counts in the Complaint assert expired patents that fall well short of the legal requirement for eligibility. All of the Asserted Patents claim an abstract idea of matchmaking without any inventive concept, thus failing both steps of the *Alice* analysis. The entire Complaint should therefore be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6) to avoid the needless waste of the resources of the Court and the parties on clearly patent-ineligible patents.

Dated: December 13, 2024                    Respectfully submitted,

                                            */s/ Brian M. Buroker*

                                            Brian M. Buroker
                                            DC Bar Number 457,158
                                            Wendy W. Cai (*pro hac vice pending*)
                                            DC Bar Number 90022309
                                            **GIBSON, DUNN & CRUTCHER LLP**
                                            1700 M St. N.W.
                                            Washington, D.C. 20036
                                            Phone: (202) 955-8500
                                            Fax: (202) 530-4200

                                            *Attorneys for Defendant Indeed, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2024, a true and correct copy of the foregoing was served upon all counsel of record via the Court's CM/ECF system.

`

*/s/ Brian M. Buroker*
Brian M. Buroker
DC Bar Number 457,158
Wendy W. Cai (*pro hac vice pending*)
DC Bar Number 90022309
**GIBSON, DUNN & CRUTCHER LLP**
1700 M St. N.W.
Washington, D.C. 20036
Phone: (202) 955-8500
Fax: (202) 530-4200

*Attorneys for Defendant Indeed, Inc.*