# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| Flexiworld Technologies, Inc., | |
| *Plaintiff* | |
| v. | C.A. No. 1:24-cv-01254 |
| Indeed, Inc., | **JURY TRIAL DEMANDED** |
| *Defendant.* | **ORAL ARGUMENT REQUESTED** |

### DEFENDANT INDEED, INC.'S MOTION TO DISMISS
### UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................ 1

II.   BACKGROUND .......................................................................................................... 3

   A.   Plaintiff's SAC Asserts Same Abstract Idea Of Matchmaking on Computers...................... 3

   B.   Claim 38 of the '637 Patent is Representative ........................................................ 4

   C.   The Asserted Patent Claims Use Only Generic Computer Components ............................ 5

III.   LEGAL STANDARD ................................................................................................... 6

   A.   Patent Eligibility May Be Determined on a Rule 12(b)(6) Motion to Dismiss ..................... 6

   B.   Conclusory Statements or Legal Conclusions Do Not Obstruct Resolution of a 12(b)(6) Motion ....................................................................................................... 7

   C.   Patent Eligibility Is Determined Using a Two-Step Test Under *Alice* ................................ 8

IV.   ARGUMENT .............................................................................................................. 8

   A.   Step One: The Claims Are Directed to the Abstract Idea of Matchmaking ......................... 8

      1.   The claims are directed toward organizing human activity .............................................. 10

      2.   The claims provide no improvement to computer technology ........................................ 12

      3.   The claims are merely functional in nature................................................................... 16

   B.   Step Two: The Claims Lack Any Inventive Concept ...................................................... 17

V.   CONCLUSION .......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
838 F.3d 1266 (Fed. Cir. 2016).................................................................15

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
109 F. Supp. 3d 916 (W.D. Tex. 2015), *aff'd*, 838 F.3d 1253 (Fed. Cir. 2016) .........................7

*Alice Corp. Pty. v. CLS Bank Int'l*,
573 U.S. 208 (2014)...............................................7, 8, 9, 10, 16, 17, 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................6

*Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*,
703 F. App'x 986 (Fed. Cir. 2017) .........................................................19

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
687 F.3d 1266 (Fed. Cir. 2012)...........................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................6

*Bilski v. Kappos*,
561 U.S. 593 (2010)...................................................................6

*Boom! Payments, Inc. v. Stripe, Inc.*,
839 F. App'x 528 (Fed. Cir. 2021) .......................................................13

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
778 F. App'x 882 (Fed. Cir. 2019) .......................................................12

*ChargePoint, Inc. v. SemaConnect, Inc.*,
No. CV MJG-17-3717, 2018 WL 1471685 (D. Md. Mar. 23, 2018), *aff'd*, 920 F.3d 759 (Fed.
Cir. 2019) ...........................................................................18

*Contiguity, LLC v. Conduent Bus. Servs. LLC*,
No. W-23-CV-00038-XR, 2024 WL 252068 (W.D. Tex. Jan. 22, 2024) ...................................7

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
880 F.3d 1356 (Fed. Cir. 2018).........................................................12

*Dealertrack, Inc. v. Huber*,
674 F.3d 1315 (Fed. Cir. 2012).........................................................6

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc,*
758 F.3d 1344 (Fed. Cir. 2014).................................................................14

*EasyWeb Innovations, LLC v. Twitter, Inc.,*
689 F.App'x 969 (Fed. Cir. 2017) ...........................................................13

*Elec. Power Grp., LLC v. Alstom S.A.,*
830 F.3d 1350 (Fed. Cir. 2016).........................................................15, 17

*Epic Tech., LLC v. Fitnow, Inc.,*
151 F. Supp. 3d 1245 (D. Utah 2015).......................................................20

*FairWarning IP, LLC v. Iatric Sys. Inc.,*
839 F.3d 1089 (Fed. Cir. 2016)..................................................................7

*Finjan, Inc. v. Blue Coat Sys., Inc.,*
879 F.3d 1299 (Fed. Cir. 2018).................................................................11

*Genetic Techs. Ltd. v. Merial LLC,*
818 F.3d 1369 (Fed. Cir. 2016)..................................................................7

*Ghaly Devices LLC v. Humor Rainbow, Inc.,*
443 F. Supp. 3d 421 (S.D.N.Y. 2020) ...................................................8, 11

*Health Discovery Corp. v. Intel Corp.,*
577 F. Supp. 3d 570 (W.D. Tex. 2021).............................................4, 7, 14

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.,*
50 F.4th 1371 (Fed. Cir. 2022) ..................................................................7

*Intell. Ventures I LLC v. Capital One Bank (U.S.A.).,*
792 F.3d 1363 (Fed. Cir. 2014)......................................................10, 17, 18

*Intell. Ventures I LLC v. Erie Indem. Co.,*
134 F. Supp. 3d 877 (W.D. Pa. 2015), *aff'd in part, vacated in part,* 850 F.3d 1315 (Fed. Cir.
2017) .................................................................................................19, 20

*Intell. Ventures I LLC v. Erie Indem. Co.,*
850 F.3d 1315 (Fed. Cir. 2017)........................................................12, 13, 18, 19

*Intell. Ventures I LLC v. Erie Indemnity Co.,*
711 F. App'x 1012 (Fed. Cir. 2017) .........................................................19

*Internet Pats. Corp. v. Active Network, Inc.,*
790 F.3d 1343 (Fed. Cir. 2015)...............................................................7, 8

*Interval Licensing LLC v. AOL, Inc.,*
896 F.3d 1335 (Fed. Cir. 2018)......................................................14, 15, 16

iii

*Jedi Techs., Inc. v. Spark Networks, Inc.*,
No. CV 1:16-1055-GMS, 2017 WL 3315279 (D. Del. Aug. 3, 2017) ..............................2, 8, 10

*Location Based Servs., LLC v. Niantic, Inc.*,
295 F. Supp. 3d 1031 (N.D. Cal. 2017), *aff'd*, 742 F. App'x 506 (Fed. Cir. 2018) ..................18

*Miller Mendel, Inc. v. City of Anna, Texas*,
107 F.4th 1345 (Fed. Cir. 2024), *cert. denied*, No. 24-439, 2024 WL 4874683 (U.S. Nov. 25, 2024) ................................................................................................................................................6

*In re Morsa*,
809 F. App'x 913 (Fed. Cir. 2020) ..............................................................................................10

*NetSoc, LLC v. Match Grp., LLC*,
838 F. App'x 544 (Fed. Cir. 2020) ..............................................................................................11

*Oasis Tooling, Inc. v. Siemens Indus. Software, Inc.*,
No. CV 22-151-CJB, 2024 WL 3273539 (D. Del. July 2, 2024) .................................................18

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015).....................................................................................................6

*PerformancePartners, LLC v. FlashParking, Inc.*,
697 F. Supp. 3d 678 (W.D. Tex. 2023).........................................................................................7

*Perry St. Software, Inc. v. Jedi Techs., Inc.*,
548 F. Supp. 3d 418 (S.D.N.Y. 2021) ......................................................................................8, 11

*Personalized Media Commc'ns, LLC v. Amazon.Com, Inc.*,
161 F. Supp. 3d 325 (D. Del. 2015), *aff'd sub nom*, *Personalized Media Commc'ns, L.L.C. v. Amazon.com Inc.*, 671 F. App'x 777 (Fed. Cir. 2016)..............................................................17

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
No. 2:16-CV-0152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017)                    20

*Pragmatus Telecom, LLC v. Genesys Telecommunications Lab'ys, Inc.*,
114 F. Supp. 3d 192 (D. Del. 2015)..............................................................................................17

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
696 F. App'x 1014 (Fed. Cir. 2017) ............................................................................................19

*Quad City Pat., LLC v. Zoosk, Inc.*,
498 F. Supp. 3d 1178 (N.D. Cal. 2020) .................................................................................1, 8, 12

*RDPA, LLC v. Geopath, Inc.*,
543 F. Supp. 3d 4 (S.D.N.Y. 2021) .........................................................................................16, 17

*RFC Lenders of Texas, LLC v. Smart Chem. Sols., LLC*,
No. W-23-CV-00832-XR, 2024 WL 4818807 (W.D. Tex. Aug. 6, 2024)...................................7

*In re Salwan*,
681 F. App'x 938 (Fed. Cir. 2017) ................................................................19

*Savvy Dog Sys., LLC v. Pennsylvania Coin, LLC*,
No. 2023-1073, 2024 WL 1208980 (Fed. Cir. Mar. 21, 2024)................................18

*Simio, LLC v. FlexSim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020)..................................................................7

*In re TLI Commc'ns LLC Pat. Litig.*,
823 F.3d 607 (Fed. Cir. 2016)............................................................12, 16

*Trinity Info Media, LLC v. Covalent, Inc.*,
562 F. Supp. 3d 770 (C.D. Cal. 2021), *aff'd*, 72 F.4th 1355 (Fed. Cir. 2023) ......................8, 11

*Two-Way Media Ltd. v. Comcast Cable Commc'ns*,
874 F.3d 1329 (Fed. Cir. 2017) ................................................................15

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014)...................................................................7

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
916 F.3d 1363 (Fed. Cir. 2019) ............................................................13, 14

*USC IP P'ship, L.P. v. Facebook, Inc.*,
576 F. Supp. 3d 446 (W.D. Tex. 2021) *aff'd sub nom. USC IP P'ship, L.P. v. Meta Platforms, Inc.*, No. 2022-1397, 2023 WL 5606977 (Fed. Cir. Aug. 30, 2023) .........................................14

*Walker Digital, LLC v. Google, Inc.*,
66 F. Supp. 3d 501 (D. Del. 2014)........................................................8, 10, 11

*Wireless Discovery LLC v. Coffee Meets Bagel, Inc.*,
654 F. Supp. 3d 347 (D. Del. 2023), *aff'd*, No. 2023-1583, 2024 WL 3336774 (Fed. Cir. July 9, 2024)..............................................................................11, 14

*Wyeth v. Stone*,
30 F. Cas. 723 (C.C.D. Mass. 1840) ...........................................................15

*Yu v. Apple Inc.*,
1 F.4th 1040 (Fed. Cir. 2021) ..................................................................7

## TABLE OF EXHIBITS

| Ex. | Description |
|:---:|:---|
| A | Claim 38 Comparison Across Asserted Patents |
| B | U.S. Patent 4,847,890 |

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| '637 patent | U.S. Reissue Patent No. RE46,637 |
| '066 patent | U.S. Reissue Patent No. RE48,066 |
| '176 patent | U.S. Reissue Patent No. RE49,176 |
| '088 patent | U.S. Reissue Patent No. RE48,088 |
| Cl. | Claim |
| Dkt. | Docket |
| Flexiworld or Plaintiff | Flexiworld Technologies, Inc. |
| F.R.C.P. | Federal Rules of Civil Procedure |
| Indeed or Defendant | Indeed, Inc. |
| Asserted Patents | U.S. Patent No. RE46,637, U.S. Patent No. RE48,066, U.S. Patent No. RE49,176, and U.S. Patent No. RE48,088 |
| Representative Claim | '637 patent, Claim 38 |
| Complaint | Complaint (Dkt. 1) |
| FAC | First Amended Complaint (Dkt. 17) |
| SAC | Second Amended Complaint (Dkt. 25) |

## I.    INTRODUCTION

After three filed Complaints, Plaintiff is still unable to plead a single patent-eligible claim. Plaintiff's Asserted Patents[1] are still directed to the abstract idea of matchmaking without any inventive technological improvement, remaining patent-ineligible under the *Alice* framework. Because eligibility is a threshold issue, the Second Amended Complaint ("SAC") should be dismissed with prejudice under Rule 12(b)(6) to avoid litigation over patents that are doomed from the beginning. Plaintiff is well aware that courts have repeatedly held that the abstract idea of "matchmaking" with no technical improvement is not patent eligible under 35 U.S.C. § 101. *See, e.g.*, *Jedi Techs., Inc. v. Spark Networks, Inc.*, 2017 WL 3315279, at *7 (D. Del. Aug. 3, 2017) ("the claims … are drawn to the abstract idea of matching people based on criteria such as personality traits or location. … The concept of matchmaking is certainly not novel and has been performed by humans for a very long time. This strikes the court as the type of concept that falls within the proscriptions of § 101."); *infra*, § IV.  Data mining for criteria and connecting users based on said criteria is nothing more than abstract matchmaking.

The present motion is Indeed's **third** attempt at substantive engagement on a motion to dismiss ("MTD").  Each of Indeed's prior two MTDs (Dkts. 14, 21) clearly laid out the law that, applied to Plaintiff's patents, demonstrate ineligibility under 35 U.S.C. § 101.  Plaintiff's litigation strategy is clear: delay and evade substantive engagement by any means necessary to drive up Indeed's costs.  Recognizing this, Plaintiff did not oppose the MTDs.  Instead, it engaged in a poorly constructed tactic with its First Amended Complaint ("FAC") that has previously been stricken by many courts across the nation: amending its complaint to include an improper,

---

[1] The patents asserted in this lawsuit are U.S. Reissue Patent Nos. RE46,637 ("the '637 patent"), RE48,066 ("the '066 patent"), RE49,176 ("the '176 patent"), and RE48,088 ("the '088 patent") (collectively, "the Asserted Patents").

conclusory pleading by an expert witness extolling the purported eligibility of its patents. Plaintiff's attempt at bolstering its conclusory pleadings with an extrinsic, equally conclusory expert declaration was a clear Hail Mary—meant to reframe the benefits of its patents not based on the claim language, but on their hired expert's legal assertions that included arguments related to language in *canceled* claims, which are wholly irrelevant. Plaintiff's paid expert opinion not only has no place at the pleadings stage, but also fails to rescue its claims from a 12(b)(6) dismissal, as it fails to cure the ineligibility of the Plaintiff's patents. *See* Dkt. 30 (Indeed's Second Motion to Strike). Plaintiff failed to name a single technological process that was unknown before the priority date of the Asserted Patents, offering only conclusory allegations by an expert that the "combination of features and functionality was not well-understood, routine, and conventional." *See, e.g.*, Dkt. 25, ¶¶ 112, 117, 130, 136, 149, 155, 168, 174.

In response, Indeed filed a Motion to Strike ("MTS") (Dkt. 20) under FRCP 10(c) and renewed its prior MTD for Plaintiff's gamesmanship related to its expert declaration. Plaintiff immediately agreed to remove the offending expert declaration exhibit by filing a SAC. But this was a bait-and-switch, as Plaintiff simply wholesale copied and pasted the illegitimate expert opinions (with full expert CV and attribution) into the pleading itself.[2] Plaintiff's perfunctory single page "response" to Defendant's Motion to Dismiss and Motion to Strike (Dkt. 26) further underscores its commitment to delay and gamesmanship. Plaintiff's latest procedural maneuvers do not make paid-for expert opinions any less relevant or conclusory at the pleading stage. Its recurring tactic of evading substantive arguments by yet another complaint imbued with inappropriate expert material is designed to obfuscate the weakness of its case, abuse the judicial process, prejudice Defendant, and needlessly increase Defendant's costs.

---

[2] Defendant has addressed this improper incorporation of expert testimony in its renewed Motion to Strike, concurrently filed with this Motion to Dismiss. *See* Dkt. 30.

Despite Plaintiff's tactics, its newly filed SAC warrants the same conclusion: the Asserted Patents **still** fail the *Alice* test and are patent ineligible. The deficiencies are facially evident, making this a clear and compelling case for a Rule 12(b)(6) dismissal with prejudice.

## II.    BACKGROUND

Flexiworld filed this lawsuit seeking past royalties on four expired reissue patents[3] that are all based on the same application filed on September 4, 2001. *See* Dkt. 25, ¶¶ 21, 122, 141. Claims 1-37 in each patent are not operative, as they were canceled during reissue. The Asserted Patents' operative claims all relate to the broad concept of matchmaking on a computer, and they are all nearly identical, with only extremely minor word changes. Flexiworld continues to assert infringement of patents that are all directed to an ineligible abstract idea.

### A.  Plaintiff's SAC Asserts Same Abstract Idea Of Matchmaking on Computers

Despite Plaintiff's attempts to confuse the issue through procedural gamesmanship, the fundamental flaws in the Asserted Patents remain unchanged. The four Asserted Patents include several types of patent claims: method claims, apparatus claims, system claims, and storage medium claims. *See*, *e.g.*, '637 patent at Cls. 38-46, 59-62, 70-72 (method claims); *id.* at Cls. 47-52, 63-66, 73-75 (system and apparatus claims); *id.* at Cls. 53-58, 67-69, 76-77 (computer-readable medium claims). The method claims recite steps performed over the Internet for connecting two matched parties for communication, including using a "reference code" to match the parties. '637 patent, Cls. 38-46, 59-62, 70-72; '066 patent, Cls. 38-43; '088 patent, Cls. 38-45; '176 patent, Cls. 38-46, 60. The system and apparatus claims recite the steps as functions performed on generic computer components. '637 patent, Cls. 47-52, 63-66, 73-75; '066 patent, Cls. 47-52; '088 patent, Cls. 45-52; '176 patent, Cls. 46-61. Finally, the storage medium claims recite the steps performed

---

[3] Here, all four reissue patents canceled claims 1-37 from U.S. Patent No. 7,099,304, and added claims 38 and after for each of the Asserted Patents.

by generic software on a generic computer storage device. '637 patent, Cls. 53-58, 67-69, 76-7; '066 patent, Cls. 53-58; '088 patent, Cls. 52-58; '176 patent, Cls. 52-58. Thus, the method claims are representative of all claims.

In its SAC, Plaintiff still fails to identify any inventive concept that would transform this abstract idea into a patent-eligible invention. All claim types are directed towards the abstract idea of matchmaking on a computer by reciting limitations related to "receiving" and "obtaining" data about the parties (which Flexiworld refers to as "data mining"), "verifying" the parties, "generating" a "reference code" (*e.g.*, a number or name for tracking purposes) to match the parties, and "opening a channel for communication" between the parties through the use of generic computer components. *See, e.g.*, Asserted Patents, Cl. 38. The Asserted Patents describe providing services for "connecting people" over "the Internet" to "mak[e] transactions" to achieve its matchmaking goal. *See, e.g.,* '176 and '088 patents at Title; Asserted Patents at Abstract.

### B.    Claim 38 of the '637 Patent is Representative

Claim 38 of the '637 patent is representative because it mirrors Claim 38 of all the other Asserted Patents with only minor rearrangements of the same limitations across the claims.[4] *See* Ex. A (Claim 38 Comparison of Asserted Patents); *Health Discovery Corp. v. Intel Corp.*, 577 F. Supp. 3d 570, 577 (W.D. Tex. 2021) ("A district court may analyze representative claims for patent eligibility where all of the asserted and challenged claims are substantially similar and linked to the same purported abstract idea."). The '637 specification explains that it "facilitate[s] users posting information, connecting to other users, and making transactions" for the goal of matchmaking "over the Internet." '637 patent at Abstract. The other Asserted Patents parrot the

---

[4] *Compare* '637 patent, Cls. 59, 61-62, 64-66, 68-69 *with* '088 patent, Cls. 38, 40-41, 46-48, 53-54 (identical or close to identical claims); *compare* '637 patent, Cls. 38, 41-43, 46, 48, 52, *with* '176 patent, Cls. 38, 41-43, 45, 47, 51 (same); *compare* '637 patent, Cls. 38-39, 41-43, 45-48, 50, 52-53, 56-57 *with* '066 patent, Cls. 38-39, 41-43, 45-48, 50, 52-53, 56-57 (same).

same goal, with claim language that is directed to the same abstract idea with the same alleged benefit and alleged improvement. '066, '176, and '088 patents at Abstract. Flexiworld refers to each of the Asserted Patents as having the same primary benefits as well.

### C.    The Asserted Patent Claims Use Only Generic Computer Components

The Asserted Patents achieve their objective of matchmaking over the Internet by relying on the use of preexisting components, including, for example, the "Internet," a "first station" (*e.g.*, a computer), a "second station" (*e.g.*, a second computer), a "packet data network" (*e.g.*, the Internet; '637 Patent 11:45-50), and a "controller" (*e.g.*, a computer; *see id.* at 11:37-39, 19:51-62). *See* Asserted Patents, cl. 38. These claims recite generic computer components with commonly used computer terminology. Flexiworld does not deny that a "controller" is simply a computer. *See* Dkt. 25. It also does not deny that nothing the "controller" does, as claimed, is a technological improvement over what a computer was already known to do by the priority date of the patents. Claimed computer terminology like "data mining" refers to just collecting data and analyzing it for a purpose; here, for matchmaking. *See, e.g.*, '637 patent, cl. 38. That the data collection by a computer over the internet is paired with the computer facilitating communication (anonymous or otherwise) between two parties does not save Flexiworld's patents. In fact, it is this very combination that is the heart of the abstract matchmaking process. The other Asserted Patents' claims similarly achieve the same goal of collecting data, then matchmaking users by relying on the use of the generic computer components from Claim 38, and a few additional generic computer components, such as a "channel for communication," "data storage unit," "processor," "packet data network," "storage medium," "Internet-enabled device," "recording medium," "display screen," and "software program." *See*, e.g., '637 patent, Cls. 45, 47, 53, 59, 63, 67, 70, 73, 76; '066 patent, Cls. 39, 47-58; '176 patent, Cls. 40, 46-52, 54-55, 57-60; '088 patent, Cls. 39, 41, 43, 45-58. These well-known computer terminologies simply

correlate to a method of communication, data storage systems, computer screens, and software—all of which are conventional computer components that are part of the generic "internet-enabled devices" (*e.g.*, "personal computers" or "smart phones with Internet") contemplated in the patents. '637 patent at 10:45-49; Abstract, 7:49-53 ("voice communication" as a channel of communication), 10:49-50, 19:50-62 ("controller unit" as including a "processor 82 (e.g. a microprocessor[)]," "memory," "operating system," "applications," "data storage," and various other computer components); 20:19-21 ("storage" component as a database).

Throughout, the claims in the Asserted Patents fail to include any specific technological improvements to, or any unconventional configuration of, any of these components listed above. Nor do they purport to have altered the method of collecting, sharing, matching, and facilitating information and communication between parties in a meaningfully novel way.

## III.    LEGAL STANDARD

### A.    Patent Eligibility May Be Determined on a Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009). To survive dismissal, the complaint must state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint for patent infringement must be based on a patent-eligible patent. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Patent eligibility is a legal question that ordinarily does not involve underlying facts and "may be, and frequently has been" determined on a Rule 12(b)(6) motion. *Miller Mendel, Inc. v. City of Anna, Tex.*, 107 F.4th 1345, 1350 (Fed. Cir. 2024) (citation omitted), *cert. denied*, 2024 WL 4874683 (U.S. Nov. 25, 2024). Addressing eligibility at the pleading stage "conserves scarce judicial resources and spares…staggering costs associated with discovery and protracted claim construction." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015) (Mayer, H., concurring). The Federal Circuit encourages early

dismissal to weed out bad patents. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, H., concurring). Patentees also cannot avoid dismissal at this stage by arguing that claim construction is needed or by making general allegations regarding innovativeness of the claims, as claim construction is not required to find a patent ineligible. *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1374 (Fed. Cir. 2016). Courts in this district dismiss complaints on 12(b)(6) grounds when the asserted patent(s) claims are ineligible. *See, e.g.*, *Intel*, 577 F. Supp. 3d at 570; *RFC Lenders of Tex., LLC v. Smart Chem. Sols., LLC*, 743 F. Supp. 3d 911, 916-17 (W.D. Tex. Aug. 6, 2024); *Contiguity, LLC v. Conduent Bus. Servs. LLC*, 2024 WL 252068, at *2-3 (W.D. Tex. Jan. 22, 2024); *PerformancePartners, LLC v. FlashParking, Inc.*, 697 F. Supp. 3d 678, 682-83 (W.D. Tex. 2023); *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 109 F. Supp. 3d 916, 932 (W.D. Tex. 2015), *aff'd*, 838 F.3d 1253 (Fed. Cir. 2016).

### B.     Conclusory Statements or Legal Conclusions Do Not Obstruct Resolution of a 12(b)(6) Motion

A court need not consider conclusory statements or legal conclusions, such as a "patent owner's conclusory allegations of inventiveness" at the motion to dismiss stage. *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1379 (Fed. Cir. 2022); *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020). Courts "disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)." *Id.* ("statement that a feature 'improves the functioning and operations of the computer' is, by itself, conclusory"). Similarly, the Court should not rely upon the expert material now ***pasted*** into the SAC when considering this motion, because the assertions are conclusory and/or legal opinions that should be stricken. *See Koehler v. Litehouse, Inc.*, 2012 WL 6217635, at *3 (N.D. Cal. Dec. 13, 2012) (striking allegations in complaint that "relay[ed] . . . expert opinion, but [made] no statements of fact."); *In re Ashworth, Inc. Sec. Litig.*, 2001 WL 37119391, at *3-4 (S.D. Cal. Dec. 3, 2001) (striking

expert declaration and his legal conclusions cited in the complaint pursuant to Rule 12(f), noting "legal conclusions need not be taken as true merely because they are cast in the form of factual allegations").  Dkt. 20 (Indeed's Opposed Motion to Strike); Dkt. 30.

### C.    Patent Eligibility Is Determined Using a Two-Step Test Under *Alice*

To evaluate patent ineligibility under Section 101, courts engage in a two-step inquiry. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014).  The court first assesses "whether the claims at issue are directed" toward a "patent-ineligible concept[]," such as an abstract idea. *Q Techs., Inc. v. Walmart, Inc.*, 2024 WL 1146150, at *2 (W.D. Tex. Mar. 6, 2024) (citing *Alice*, 573 U.S. at 217*)*.  If so, the court asks in step two whether the claims contain an "inventive concept," or "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217-18. "[W]ell-understood, routine, [or] conventional" activities are not sufficient in and of themselves to confer the required inventive concept. *Id.* at 225.

## IV.    ARGUMENT

In light of Plaintiff's second revision attempt, it remains abundantly clear that the Asserted Patents *still* fail both steps of the *Alice* inquiry.  *First*, the claim elements, considered both individually and as an ordered combination, are directed to the abstract idea of matchmaking, with no purported technological improvement to the matchmaking process. Courts have repeatedly held that claims are directed to the idea of matchmaking are abstract.  *Second*, the claims lack any inventive concept because they recite nothing more than a combination of generic computer components in a conventional way.

### A.    Step One: The Claims Are Directed to the Abstract Idea of Matchmaking

Stripped of jargon, the Asserted Patents boil down to collecting information about different parties, matching those parties based on that information, and facilitating communications between

those parties. This kind of "matchmaking" has existed for centuries—long before the Internet, and in myriad human activities, such as: matching buyers and sellers of goods and services; matching people for personal relationships; matching news sources and interested readers; and matching employers and potential employees. Every Asserted Patent claims the age-old idea of matchmaking, reciting matchmaking's fundamental steps: collecting information on parties, analyzing that information to match them, and facilitating communication between them.[5] The claims recite performing these steps on a computer, but fail to provide any technical improvement to this process nor overcome any unique technological problem when performed on a computer.

To determine whether a patent's claims are directed to an abstract idea, courts consider several factors, such as whether the claims (1) organize human activity; (2) describe computerized processes that could be performed mentally or with a pen and paper and do not represent a computer innovation; and (3) recite purely functional, result-oriented language (i.e., explaining a result without specifying how that result is achieved). While not all of these factors need to be met, the claims here satisfy all three, leaving no doubt that they are directed at an abstract idea. Courts have found abstract ideas to include: (i) **Matchmaking**: *Jedi,* 2017 WL 3315279, at *7; *Walker Digital, LLC v. Google, Inc.*, 66 F. Supp. 3d 501, 508-09 (D. Del. 2014); *Trinity Info Media, LLC v. Covalent, Inc.*, 562 F. Supp. 3d 770, 782 (C.D. Cal. 2021), *aff'd*, 72 F.4th 1355 (Fed. Cir. 2023); *Ghaly Devices LLC v. Humor Rainbow, Inc.*, 443 F. Supp. 3d 421, 429 (S.D.N.Y. 2020); (ii) **Finding and Introducing Compatible Individuals**: *Perry St. Software,*

---

[5] The Court should not be led astray by the claims' repeated use of the phrase "data mining." *See* Dkt. 25, ¶¶ 73, 122, 140, 159; Asserted Patents. Although the claims reference "data mining," they do not offer more beyond a general idea that data is being "mined," *i.e.* collected, within the process of matching users. *See* '637 patent, Cl. 38. "Data mining" is used as a widely-used term, without further innovation. *Quad City Pat., LLC v. Zoosk, Inc.,* 498 F. Supp. 3d 1178, 1186 (N.D. Cal. 2020). Flexiworld cannot contend that "data mining" was not well known at the time of the priority date, especially since the specifications uses the term with no explanation. Dkt. 25.

*Inc. v. Jedi Techs., Inc.*, 548 F. Supp. 3d 418, 431 (S.D.N.Y. 2021); *Ghaly Devices*, 443 F. Supp. 3d at 429; (iii) **Data Mining**: *Quad City*, 498 F. Supp. 3d at 1186; and (iv) **Anonymous Transactions/Communications**: *Walker Digital*, 66 F. Supp. 3d at 508--09, 513 ("these steps add nothing inventive to the core concept of anonymously exchanging information about people, a practice that…[has] long been practiced by human headhunters and matchmakers"). *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324-26 (Fed. Cir. 2016).

1.      **The claims are directed toward organizing human activity**

The Supreme Court and the Federal Circuit have repeatedly affirmed that organizing human activity is an abstract idea. The Asserted Patents claims fall squarely into this category, as matchmaking is a way of organizing human activity.

In *Alice*, the Supreme Court invalidated claims directed to facilitating an exchange of obligations between parties to a financial transaction, holding that such claims were directed to organizing human activity and thus, abstract. *Alice*, 573 U.S. at 214 n.2, 220. The *Alice* court emphasized that the abstract idea of facilitating the exchange of information is "a fundamental economic practice long prevalent" that operates as "a building block of the modern economy." *Id.* at 219-220. The Federal Circuit has found that even "customizing information based on [] information known about the user" and other types of data collected to organize human transactions are "directed to abstract ideas" and, thus, not patentable. *Intell. Ventures I LLC v. Cap. One Bank (U.S.A.)*, 792 F.3d 1363, 1367-69 (Fed. Cir. 2014); *In re Morsa*, 809 F. App'x 913, 917 (Fed. Cir. 2020). Similarly, the patents' data collection of a party's "history of transactions"—simply data that is known about the user—is also directed to abstract ideas. Dkt. 25, ¶¶ 117; '637 patent, cls. 38, 47, 53. Like in *Alice*, the Asserted Patent claims are directed towards "a fundamental economic practice long prevalent in our system of commerce." *Alice*, 573 U.S. at 219. Claim 38 recites a process to connect one party with another by "obtaining"

information about a second party, "mining" information about the party, matching the two parties, and assigning a "reference code" to the match. '637 patent. This is nothing more than matchmaking, a fundamental human activity, in business transactions. *Morsa*, 809 F. App'x at 917 (claims for matching users to advertisers based on information collected about users were directed to the abstract idea and the fundamental practice of organizing human activity).

Other courts have likewise held that claims reciting matchmaking activities of the very type in the Asserted Patents are directed to abstract ideas and not patent eligible. *See, e.g., Jedi*, 2017 WL 3315279, at *7; *Walker Digital*, 66 F. Supp. 3d at 508–09, 513 (claims "recite a generic headhunting or matchmaking request by two parties. There is nothing 'inventive' about any of the listed rules or any other steps of the claims, including the order in which they are to be performed…the claim limitations simply lay out an interaction whereby two parties share a series of demands with a third party, where one of the demands of both parties is that the parties' identities remain anonymous unless and until there is at least some overlap between the demands and requirements of the two parties. [ . . . ] steps add nothing inventive to the core concept of anonymously exchanging information about people, a practice …long been practiced by human headhunters and matchmakers"); *Trinity,* 562 F. Supp. 3d at 770 (claims "directed to patent-ineligible abstract idea of matching users who gave corresponding answers to a question"); *Ghaly Devices*, 443 F. Supp. 3d at 429 (patent claiming process for matching different users on dating app is drawn to abstract idea of "human compatibility and matchmaking"); *NetSoc, LLC v. Match Grp., LLC*, 838 F. App'x 544, 548 (Fed. Cir. 2020) (claims "directed to the abstract idea of automating the conventional establishment of social networks to allow humans to exchange information and form relationships"); *Wireless Discovery LLC v. Coffee Meets Bagel, Inc*., 654 F. Supp. 3d 347, 356-57 (D. Del. 2023) (claims directed to abstract idea of "exchanging

information about people based on" location and organization membership), *aff'd*, 2024 WL 3336774 (Fed. Cir. July 9, 2024); *Perry St.,* 548 F. Supp. 3d at 431 ("claims are clearly directed toward the abstract idea of finding and introducing individuals to other[]" compatible people is a patent-ineligible concept). Similarly, the Asserted Patents are directed to an abstract idea and thus fail Step One of *Alice*.

2.    **The claims provide no improvement to computer technology**

The Asserted Patents also fail Step One because they do not improve computer technology. When examining patent claims with computer-related claim elements, courts look to see whether the claims are directed to an improvement to computers as part of the Step One analysis. *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). While claims directed to "a specific improvement in the capabilities of computing devices" may pass muster under Step One, claims that simply outline a "process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool" do not pass muster under Step One. *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361–62 (Fed. Cir. 2018); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 889-90 (Fed. Cir. 2019). The claims at issue here do not improve computer technology; they simply rely on combining generic computer elements to achieve the abstract idea of matchmaking. For example, the Representative Claim refers to a "controller"—a generic term for a computer, which the patent acknowledges. '637 patent at Cl. 38, 9:37-41, 11:37-39. Nowhere does the patent build upon the controller units in any unconventional or unexpected way. Reciting "vague, functional descriptions of server components," such as "control unit," is "insufficient" to transform "the abstract idea into a patent-eligible invention." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016).

Flexiworld also fails to plead plausible facts to support its conclusory allegations that its claims are not routine or conventional. *Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528,

533 (Fed. Cir. 2021) ("Boom's amended complaint … does not provide plausible factual allegations to support [its allegations on routine/conventionality]").  Without details to establish "an improvement in computer functionality," the FAC offers nothing helpful to the 12(b)(6) analysis.  *MyMail, Ltd. v. ooVoo, LLC*, 2021 WL 3671364, at *6 (Fed. Cir. Aug. 19, 2021).

Conclusory assertions made by an expert (Dkt. 25, ¶¶ 23-31, 73-75, 81, 83, 85, 102-105) are unavailing, as courts have found ineligibility for failing to "show that the patents improve the functioning of any computer" even in the face of conclusory testimony.  *Bascom Rsch., LLC v. LinkedIn, Inc*., 77 F. Supp. 3d 940, 952-53 (N.D. Cal. 2015) ("the Court finds that Dr. Wills' analysis [on "implementing a communications system designed to facilitate anonymous communications between parties"] is largely conclusory…even accepting Dr. Wills' conclusions, they do not demonstrate that the asserted claims contain inventive elements that transform the abstract idea into a patent-eligible invention…Dr. Wills does not show that the patents improve the functioning of any computer.").  Flexiworld repeatedly insists "the primary benefits of the invention" included "the ability to communicate anonymously," yet it is only the ***canceled*** claims that mention "anonymous communication."  *See* Asserted Patents, Cancelled Cls. 1, 30, 33, 36, 37.  The SAC continues to offer meritless allegations about an alleged patent benefit that is nowhere to be found in the operative claims.

That a computer is capable of "data mining" is not a new idea—nowhere is Flexiworld able to claim that controllers did not have data mining capabilities or the ability to connect users over the Internet.  Even Dr. Almeroth uses "data mining" ubiquitously, offering no definition nor specific improvement upon conventional data mining techniques.  *See* Dkt. 25.  Thus, appending "data mining" to some of the claims does not make them any less abstract.  As explained, "data mining" is another name for collecting information for further use in an activity (here,

matchmaking), and it has been held to be an abstract idea. *Quad City*, 498 F. Supp. 3d at 1186 ("a particular data mining technique" is just "'analyzing information by steps people go through in their minds, or by mathematical algorithms, [and thus,] without more,' is an abstract idea"). While the claims at issue refer to obtaining data through data mining, that does not alter the abstract nature of the claims. *See, e.g., Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017) ("creating an index and using that index to search for and retrieve data" is directed to an abstract idea and therefore patent-ineligible). Here, the claims similarly are searching and retrieving data through "data mining."

Other terms used in Claim 38 of the '637 patent, such as "Internet," a "first station," a "second station," and a "packet data network," are also not described in non-conventional ways. There is no novelty in using a "packet data network" (*e.g.*, the Internet) to collect, share, match, and facilitate information; nor is there any non-conventional use of a station or computer servers to do the same as the common specification to all four Asserted Patents explains. *See* '637 patent, Cl. 38, Fig. 1; 10:61-65. The other generic computer components in the claims of the Asserted Patents do not provide an inventive step either. *See, infra,* pp. 16-20.

The Asserted Patent claims that recite creating a "reference code" based on information "obtained" or "min[ed]" demonstrate that the claims are also directed at nothing more than an abstract idea. In *Boom*, the Federal Circuit stated that "use of an identification code known only to the buyer and the third party to verify a transaction could be performed just as readily without the use of computers and cannot be said to be a 'technological' solution that improves the functioning of a computer system," and thus found "that, at most, the use of an identification code does nothing more than overlay a second layer of abstraction—specifically, identity authentication—on the [] procedure described by the claims." *Boom,* 839 F. App'x at 532.

Adding known computer abilities of facilitating communications with a reference code and data mining to achieve the abstract idea of matchmaking, similarly, cannot be said to be a technology solution that improves the functioning of a computer system.

Combining the steps of "data mining" and connecting users based on collected data amounts to nothing more than collecting and using data to facilitate a transaction, and is still abstract. *See Mortg. Grader*, 811 F.3d at 1324 (claims "recite nothing more than the collection of information to generate a 'credit grading' and to facilitate anonymous loan shopping"); *Broadband iTV*, 2022 WL 4703425, at *14, *aff'd,* 113 F.4th at 1368 ("combination of two abstract ideas does not render an abstract idea less abstract."). Collecting, analyzing, and using data through a combination of steps is similarly abstract. *See EasyWeb Innovations, LLC v. Twitter, Inc.*, 689 F.App'x 969, 971 (Fed. Cir. 2017) ("receiving, authenticating, and publishing data" are abstract ideas); *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1366, 1368 (Fed. Cir. 2019) ("collecting, analyzing, manipulating, and displaying data" are abstract ideas); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350–51 (Fed. Cir. 2014) ("a process of organizing information through mathematical correlations" is not patent-eligible). Finally, the exchange of information in the claims is also an abstract idea. *Wireless Discovery,* 654 F. Supp. 3d at 355-57 (finding "social networking, such as matching people by their location" and "simply exchanging information about people based on [location and organization membership]" to be abstract); *Intel*, 577 F. Supp. 3d at 574 (claims "directed to performing feature ranking, selection, and reduction" for pattern recognition not patent-eligible).

In sum, the Asserted Patents use standard and generic communication devices, such as computers and servers, the Internet, and other component parts, as mere tools to enable already-known activities. *See, infra*, pp. 16-20. Because the Asserted Patents do not improve computer

technology, they are directed to an abstract idea.

### 3.    The claims are merely functional in nature

A third factor courts look at in assessing whether claims are directed to an abstract idea is whether they are purely functional in nature.  Claims that are result-oriented, reciting a desired result without specifying how that result is achieved, are directed to an abstract idea.  The Asserted Patent claims do just that: use functional result-oriented language.  Claims that ultimately "[fail] to recite a practical way of applying an underlying idea . . . [and] instead were drafted in such a result-oriented way that they amounted to encompassing 'the principle in the abstract' no matter how implemented" are not patent-eligible.  *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1343 (Fed. Cir. 2018) (citation omitted). The "[e]ssentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016); *see also Affinity Labs of Tex., LLC v. Amazon.com Inc.,* 838 F.3d 1266, 1269-70 (Fed. Cir. 2016).

The Federal Circuit has held ineligible claims that "requir[e] the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but [do] not sufficiently describe how to achieve these results in a non-abstract way." *Two-Way Media Ltd. v. Comcast Cable Commc'ns*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).  Similarly here*,* the claims here do not describe how to achieve the claimed steps.  Specifically, Claim 38 emphasizes that it is "obtaining" and "mining" information, and then "generating" and "supplying" a reference code based on the collected information through use of a "controller." '637 patent.  This recites generic steps ("obtaining," "mining," "generating," "supplying," etc.) but does not describe specifics on *how* those steps are achieved.  For example, there is no explanation or inventive aspect to how data is collected nor how communications are opened between parties; the claims do not even purport to offer an inventive method of "mining" information and the specification similarly gives

no explanation of how to data mine at all. Likewise, there is nothing inventive about "generating" a "reference code" to match users, anonymously or otherwise; the claims, again, offer no advancement to such a step. Even further, the Representative Claim (and all other claims) describe its component parts in a purely functional way, including by adding no more to the "controller" than the performance of the method steps that are well-known. The other Asserted Patents suffer from the same deficiencies, adding no more to "data storage unit," "processor," "storage medium," "packet data network," "Internet-enabled device," "recording medium," "display screen," and "software program." *See, infra*, pp. 16-20; *see also* '066 patent, Cls. 39, 47, 53, 55-56; '176 patent, Cls. 45-46, 48, 52, 54, 57-58; '088 patent, Cls. 46, 51-52, 54-55.

The Asserted Patents' repeated "fail[ures] to provide any technical details" for its claims make it abundantly evident that these technological components are "merely a conduit for the abstract idea." *TLI Commc'ns*, 823 F.3d at 612. Put differently, the Asserted Patent claims "amount[] to" broadly "encompassing" the entire "'principle in the abstract' no matter how implemented," including through a combination of well-known technological components. *Interval Licensing*, 896 F.3d at 1343. Thus, the Asserted Patents are directed to an abstract idea. Having failed the first step of the *Alice* test, the analysis proceeds to the second step.

### B. Step Two: The Claims Lack Any Inventive Concept

Because the Asserted Patents claims fail Step One, the claims can only survive if the Court finds an inventive concept in Step Two. *Alice*, 573 U.S. at 217-218. These claims fail Step Two.

An inventive concept must be "significantly more" than an abstract idea. *Id.* at 217-18. It is not enough to offer an "instruction" to implement or apply the abstract idea on a computer, nor is it enough to "[s]imply append[] conventional steps, specified at a high level of generality." *Id.* at 222. Flexiworld purports to solve the "drawbacks of email[s]" and voice communications, and "receipt of unwanted phone calls," but the Asserted Patents do not offer a non-abstract

17

solution to these drawbacks that did not already exist by the priority date. Dkt. 25, ¶¶ 76, 79, 82. For example, the benefit alleged by Flexiworld of "communicat[ing] anonymously, orchestrated by a controller" fails to acknowledge that voice communications have existed for over a century and connecting people anonymously by a controller existed since the 1980s. *See, e.g.,* '637 patent at p. 2 (citing to "anonymous interactive telephone system[s]" patents 4,847,890, 4,878,239, 5,058,152); Ex. B (U.S. Patent 4,847,890). Instead, the Asserted Patents offer nothing more than the use of "some unspecified, generic computer," which the *Alice* court deemed "not 'enough' to transform the abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 208. The Federal Circuit explained that "invocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept in the application of an abstract idea." *Elec. Power*, 830 F.3d at 1355; *RDPA, LLC v. Geopath, Inc*., 543 F. Supp. 3d 4, 22 (S.D.N.Y. 2021) (citing *Elec. Power* to state "merely selecting information…for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes, whose implicit exclusion from § 101 undergirds the information based-category of abstract ideas"). None of the computer terms—not the structures, the steps, the combination, nor the data recited—in the claims provide an inventive concept.

Specifically, "controller," "Internet," "first station," "second station," "packet data network," "channel of communication," "packet data network," "data storage unit," "processor," "storage medium," "Internet-enabled device," "recording medium," "display screen," and "software program" are well known, as the patent specifications confirm. *See, e.g.*, '637 patent, 1:43-2:10; 2:20-40, 2:58-3:2, 7:49-53, 10:60-67, 11:60-12:12, 19:51-54, 22:17-20; '066 patent, 10:63-64, 11:1-3, 18:36-41; 19:54-56, 22:19-22; '176 patent, 11:3-10, 19:62-65, 22:27-30; '088 patent, 9:51-58, 10:64-11:5, 21:6-10, 22:21-24. All of these, individually or combined, are

generic computer components. *See, e.g.*, *Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*, 161 F. Supp. 3d 325, 338 (D. Del. 2015), *aff'd sub nom*, *Personalized Media Commc'ns, L.L.C. v. Amazon.com Inc.*, 671 F. App'x 777 (Fed. Cir. 2016) ("receiver **stations** is a generic computer component"); *Pragmatus Telecom, LLC v. Genesys Telecomms. Lab'ys, Inc.*, 114 F. Supp. 3d 192, 203 (D. Del. 2015) ("These generic computer…components—'**automated communication distribution system**,' 'terminal,' 'user interface,'...'over a **network**,' 'data'— do not individually or together transform this abstract idea into something sufficient for patentability"); *Intell. Ventures I*, 792 F.3d at 1368 ("The recited…database, a user profile,…a **communication medium**, are all generic computer elements"); *Alice*, 573 U.S. at 226 ("a 'data **processing** system' with a "communications **controller**" and '**data storage** unit,' ... is purely functional and generic. Nearly every computer will include a '**communications controller**' and '**data storage** unit' capable of performing the basic calculation, storage, and transmission functions…"); *Intell. Ventures I*, 850 F.3d 1332,1341 (Fed. Cir. 2017) ("the claims recite both a generic computer element—a **processor**—and a **series of generic computer 'components' that merely restate their individual functions**—i.e.,…identifying,…detecting, and modifying."); *Oasis Tooling, Inc. v. Siemens Indus. Software, Inc.*, 2024 WL 3273539, at *8 (D. Del. July 2, 2024) (**processor** and **storage medium**); *Savvy Dog Sys., LLC v. Pa Coin, LLC*, 2024 WL 1208980, at *4 (Fed. Cir. Mar. 21, 2024) (touch screen display); *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017-18 (Fed. Cir. 2017) (server) (all emphases added). The claims at issue add nothing more to these generic computer components, and are conspicuously silent as to anything "more" than what these components are known for. For example, the '066 patent describes a "channel for communication" but claims use of that channel for connecting parties in standard ways cited to in the patent. '066 Patent at Cl. 38, 7:49- 53; *id.* at p. 2 (citing

U.S. 4,847,890).[6]  Moreover, the steps recited in the claims are not inventive concepts, either individually or combined. The claims at issue simply recite "obtaining," "data mining," "transmit[ting]," "generating," "receiving," and "supplying" data between a first station and second station to share information.  *See, e.g.*, Asserted Patents, Cl. 38; *Intell. Ventures I LLC v. Erie Indem. Co.*, 134 F. Supp. 3d 877, 925 (W.D. Pa. 2015), *aff'd in part, vacated in part*, 850 F.3d 1315 (Fed. Cir. 2017) (sending/receiving data fail to provide inventive concept).

Finally, the information and data collected and shared is not unique or innovative. *See* '637 patent, cl. 38 (collecting generic "product information, service information," etc.).  This data is just like any other that is otherwise collected, shared, matched, and facilitated on generic computer components.  *Epic Tech., LLC v. Fitnow, Inc.*, 151 F. Supp. 3d 1245, 1250 (D. Utah 2015) (finding claims directed to "collecting product information via a bar code, recording the data, organizing the data, and displaying it to a user" to be patent ineligible; *Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, 2017 WL 1065938, at *18 (E.D. Tex. Mar. 8, 2017), *adopted*, 2017 WL 1177988 (E.D. Tex. Mar. 30, 2017) (obtaining client and financial product information and decision criteria fails to provide an inventive step).  All of the generic components, and any combination thereof, in the claims existed and nothing in the claims provide an inventive concept required by Step Two of the *Alice* analysis.  Thus, the claims are patent ineligible.

## V.    CONCLUSION

All four expired patents fall short of the legal requirement for eligibility, claiming only the abstract idea of matchmaking without any inventive concept, thus failing both steps of *Alice*.  The Amended Complaint should be dismissed with prejudice under Rule 12(b)(6).

---

[6] U.S. Patent 4,847,890 (1989) describes "establishing telephone communications between [parties] through a [] system while preserving confidentiality and mutual anonymity[.] Incoming calls [are...] identified by coded entries, are transferred by the [] controller...". Ex. B at Abstract.

Dated: March 21, 2025

Respectfully submitted,

*/s/ Brian M. Buroker*

Brian M. Buroker
DC Bar Number 457,158
Wendy W. Cai (*pro hac vice*)
DC Bar Number 90022309
**GIBSON, DUNN & CRUTCHER LLP**
1700 M St. N.W.
Washington, D.C. 20036
Phone: (202) 955-8500
Fax: (202) 530-4200

*Attorneys for Defendant Indeed, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2025, a true and correct copy of the foregoing was served upon all counsel of record via the Court's CM/ECF system.

`

*/s/ Brian M. Buroker*
Brian M. Buroker
DC Bar Number 457,158
Wendy W. Cai (*pro hac vice pending*)
DC Bar Number 90022309
**GIBSON, DUNN & CRUTCHER LLP**
1700 M St. N.W.
Washington, D.C. 20036
Phone: (202) 955-8500
Fax: (202) 530-4200

*Attorneys for Defendant Indeed, Inc.*