**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| Flexiworld Technologies, Inc.,<br><br>*Plaintiff,*<br><br>v.<br><br>Indeed, Inc.,<br><br>*Defendant.* | C.A. No. 1:24-cv-01254-ADA<br><br>**JURY TRIAL DEMANDED**<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT INDEED, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

Page

I. *Alice* Step One: The Claims Are Directed to the Abstract Idea of Matchmaking ................. 1

A. Flexiworld's Alleged "Improvements" Amount to No More Than Abstract Ideas Themselves ........................................................................................ 1

B. Flexiworld Fails to Distinguish the Numerous Federal Circuit and Other Decisions Holding Similar Claims Ineligible ............................................................ 4

II. *Alice* Step Two: The Claims Lack an Inventive Concept ..................................................... 7

III. Dismissal with Prejudice Is Appropriate ................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
97 F.4th 1371 (Fed. Cir. 2024) ....................3

*AlexSam, Inc. v. Aetna, Inc.*,
119 F.4th 27 (Fed. Cir. 2024) ....................8

*Alice Corp. v. CLS Bank Int'l*,
573 U.S. 208 (2014)....................3, 7

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
967 F.3d 1285 (Fed. Cir. 2020)....................3, 6

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)....................8

*Boom! Payments, Inc. v. Stripe, Inc.*,
839 F. App'x 528 (Fed. Cir. 2021) ....................2

*BSG Tech. LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)....................8

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019)....................2

*Clear with Computers, LLC v. Altec Indus., Inc.*,
2015 WL 993392 (E.D. Tex. Mar. 3, 2015) ....................10

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
859 F.3d 1352 (Fed. Cir. 2017)....................9

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014)....................6

*Droplets, Inc. v. YAHOO! Inc.*,
2022 WL 20016849 (N.D. Cal. Aug. 25, 2022) ....................6

*Genetic Techs. Ltd. v. Merial LLC*,
818 F.3d 1369 (Fed. Cir. 2016)....................9

*Jedi Technologies, Inc.* v. *Spark Networks, Inc.*,
2017 WL 3315279 (D. Del. Aug. 3, 2017) ....................3, 4, 5

*KOM Software Inc. v. NetApp, Inc.*,
697 F. Supp. 3d 203 (D. Del. 2023)....................7

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
942 F.3d 1143 (Fed. Cir. 2019)....................1

*Link v. Wabash R. Co.*,
370 U.S. 626 (1962)....................10

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F.4th 1280 (Fed. Cir. 2024)....................2

*Patent Armory Inc. v. Choice Hotels Int'l, Inc.*,
No. 6:23-cv-00594-ADA (W.D. Tex. Apr. 3, 2025)....................6

*Quad City Pat., LLC v. Zoosk, Inc.*,
498 F. Supp. 3d 1178 (N.D. Cal. 2020)....................3

*Sanderling Mgm't Ltd. v. Snap Inc.*,
65 F.4th 698 (Fed. Cir. 2023)....................9

*SAP America, Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)....................9

*Synopsys, Inc. v. Mentor Graphics Corp.*,
839 F.3d 1138 (Fed. Cir. 2016)....................9

*Touchstream Technologies, Inc. v. Charter Commc'ns*, *Inc.*,
2024 WL 5428804 (E.D. Tex. Dec. 30, 2024)....................6

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
957 F.3d 1303 (Fed. Cir. 2020)....................6

*Walker Digital*, *LLC v. Google, Inc.*,
66 F. Supp. 3d 501 (D. Del. 2014)....................3, 5

*Woodson v. Surgitek, Inc*.,
57 F.3d 1406 (5th Cir. 1995)....................10

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| ’066 patent | U.S. Reissue Patent No. RE48,066 |
| ’088 patent | U.S. Reissue Patent No. RE48,088 |
| ’176 patent | U.S. Reissue Patent No. RE49,176 |
| ’637 patent | U.S. Reissue Patent No. RE46,637 |
| Asserted Patents | U.S. Patent No. RE46,637, U.S. Patent No. RE48,066, U.S. Patent No. RE49,176, and U.S. Patent No. RE48,088 |
| Br. | Defendant Indeed, Inc.’s Motion to Dismiss Under Federal Rule of Civil Procedure 12(B)(6) (Dkt. 31) |
| Cl. | Claim |
| Complaint | Complaint (Dkt. 1) |
| Dkt. | Docket |
| Flexiworld or Plaintiff | Flexiworld Technologies, Inc. |
| Indeed or Defendant | Indeed, Inc. |
| Opp. | Plaintiff’s Response to Defendant Indeed, Inc.’s Motion to Dismiss (Dkt. 34) |
| SAC | Second Amended Complaint (Dkt. 25) |

This is an exceptional case that warrants early dismissal because the asserted claims are plainly ineligible under 35 U.S.C. § 101. These claims are so fundamentally flawed that Flexiworld has already amended its complaint multiple times—and even improperly attempted to inject expert opinion—to delay its day of reckoning. But that day has now arrived.

The claims are directed to nothing more than the abstract idea of matchmaking in Step One, and they fail to add any inventive step sufficient to save them from ineligibility in Step Two. No factual disputes preclude dismissal. Flexiworld's Second Amended Complaint ("SAC") brazenly and improperly inserts conclusory expert opinions in a failed attempt to manufacture a dispute. But having an expert opine that performing matchmaking using a computer is somehow innovative fails to establish a factual dispute when it is unsupported by the intrinsic record.

Not only does Flexiworld spend the majority of its brief describing alleged "improvements" to communications systems that amount to nothing but the abstract idea itself, *i.e.*, matchmaking, but it also tries to salvage its abstract claims by pointing to a feature—facilitating anonymous communications—mentioned only in the specification. But eligibility turns on the patent claims, not the specification. And while the original patent claims were directed at that feature, Flexiworld explicitly and intentionally ***removed it from the reissued patent claims*** at issue here. Relying on a feature that is no longer even claimed underscores how completely meritless Flexiworld's opposition is. Dismissal now is warranted.

## I. *ALICE* STEP ONE: THE CLAIMS ARE DIRECTED TO THE ABSTRACT IDEA OF MATCHMAKING

### A. Flexiworld's Alleged "Improvements" Amount to No More Than Abstract Ideas Themselves

For patent eligibility at Step One, a claim's "focus" must be on "specific," "non-abstract," and "concrete" "improvements to existing technological processes" and the "functioning of a computer" itself—rather than an abstract process implemented on a computer. *Koninklijke KPN*

*N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1149–53 (Fed. Cir. 2019) (cleaned up). Flexiworld's central argument is that the asserted claims[1] are not abstract because of the "many improvements to communication systems." Opp. at 3. But Flexiworld identifies no such improvements ***in the claims*** themselves. Rather, Flexiworld improperly relies on the specification, *see id.* at 3–6, when it is the "language of the asserted claims themselves" that is the "focus" of the § 101 inquiry. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019). None of the other purported improvements Flexiworld identifies appear in the claims either. Opp. at 6.

For instance, Flexiworld states that its claims relate to a "communication system that can facilitate digital communication with anonymity by data mining user information collected by the controller over the Internet and using that data mined information to initiate or suggest a connection between the first party and second party." *Id.* But anonymous communications are mentioned only in the ***specification***, and Flexiworld intentionally removed this feature from the claims during the reissue process.[2] Br. at 5, 13. *Compare* cancelled '637 Patent, cl. 1 ("[a] method of facilitating anonymous communication between a first station and a second station…"), *with* '637 Patent, cl. 38 ("[a] method of data mining user information associated with connecting a first party with a second party over the Internet"). "[F]eatures that are not ***claimed*** are ***irrelevant***

[1] Flexiworld did not dispute Indeed's contention that claim 38 of the '637 Patent is representative of the other claims of the patents-in-suit for purposes of the patent-eligibility analysis. *See* Br. at 4–5. The patent-eligibility question therefore should be decided on that claim. *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) ("If the patent owner fails to meet its obligation to make non-frivolous arguments in opposition to the representative claim contention, it forfeits its right to argue that the claims in the group identified by the movant are patent eligible even if the representative claim is ultimately found to be ineligible.").

[2] To the extent Flexiworld suggests a "reference code" is a specific improvement reflecting an improvement of anonymous communications, Opp. at 4–5, it failed to address the Federal Circuit's finding that "use of an identification code known only to" one party to "verify a transaction" could be "performed just as readily without the use of computers and cannot be said to be a 'technological' solution that improves the functioning of a computer system." *Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528, 532 (Fed. Cir. 2021); *see* also Br. at 14.

as to step 1 or step 2 of the [] *Alice* analysis." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1293 (Fed. Cir. 2020) (emphases added); *see also AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1379 (Fed. Cir. 2024) ("refus[ing]" to "import details from the specification" for purposes of an *Alice* analysis "if those details are themselves not claimed"). Even if anonymous communication was claimed, "anonymity" is not a "specific" improvement. *See, e.g.*, *Walker Digital*, *LLC v. Google, Inc.*, 66 F. Supp. 3d 501, 508–09, 513 (D. Del. 2014) (the claim "recite[s] a generic headhunting or matchmaking request by two parties," with the steps "adding nothing inventive to the core concept of anonymously exchanging information about people, a practice . . . [that has] long been practiced by human headhunters and matchmakers").

Nor does "data mining" confer the necessary "specific" improvement. Br. at 13–14. Data mining simply means collecting and analyzing information, which is, without more, an "abstract idea." *Quad City Pat., LLC v. Zoosk, Inc.*, 498 F. Supp. 3d 1178, 1186 (N.D. Cal. 2020); *Jedi Technologies, Inc. v. Spark Networks, Inc.*, 2017 WL 3315279, at *7 (D. Del. Aug. 3, 2017). While Flexiworld attempts to distinguish *Quad City* by claiming that Flexiworld's "Asserted Patents limit their data mining to a specific computer technique," Opp. at 13, this distinction is unavailing. The Supreme Court has held that limiting an abstract idea "to a particular technological environment" is "not [itself] enough for patent eligibility." *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 223 (2014). Therefore, Flexiworld's alleged "improvement" to a "communication system" is merely the abstract idea itself: data mining user information (*i.e.*, collecting information) and using that data mined information to initiate a connection (*i.e.*, matching and facilitating communications between two parties).

Flexiworld also points to "an automated process for end users to be connected automatically without requiring manual inputting of specific contact information of the contacted

party, by using analytical services based on the information about the users (collected/obtained by the controller)." Opp. at 7. This purported "improvement" is simply a rephrasing of the abstract idea: connecting end users (*i.e.*, matching and facilitating communication between two parties) based on information "collected/obtained by the controller" (*i.e.*, collecting information). Such an abstract idea is inadequate for patent eligibility at Step One.

Flexiworld accuses Indeed of "overgeneraliz[ing] the claims" as directed to matchmaking. *Id.* at 9–10. While Flexiworld argues the claims "do much more than simple matchmaking," it describes the same steps outlined in Indeed's motion. *Id.* at 1, 9–10; Br. at 8–9. These steps are the core components of matchmaking, and courts have repeatedly found such claims to be abstract. Br. at 9. Flexiworld's attempt to repackage this concept does not change the result.

### B. Flexiworld Fails to Distinguish the Numerous Federal Circuit and Other Decisions Holding Similar Claims Ineligible

Indeed detailed the numerous cases holding that claims focused on organizing human activity, including matchmaking, are ineligible under § 101. *See id.* at 9–10 (compiling cases). Flexiworld's attempt to distinguish those cases fails. Flexiworld argues that its claims differ because they are directed to "specific improvements to communication systems," such as "an automated process for end users to be connected automatically by data mining user information collected by the controller over the Internet." Opp. at 11. But that description merely repeats the abstract idea: collecting information and connecting users based on that information, *i.e.*, matchmaking. *See id.* at 5 ("The Asserted Patents then describe . . . that the invention may **gather such information** [and] . . . can **analyze for potential matches** between parties and then **establish communication** links between them" (emphases added)).

Flexiworld's other attempts to distinguish Indeed's cited cases fare no better. For instance, the ineligible claims in *Jedi Technologies, Inc.* "rest[ed] upon the notion of human

compatibility and matchmaking, where an individual learns about the personalities and interests of two different individuals and, based upon a certain criteria, determines whether the individuals are compatible." 2017 WL 3315279 at *7. Flexiworld argues that, unlike in *Jedi I*, its claims identify a "specific improvement to the functionality of a computer" through "the data mining steps . . . used for automatically connecting parties." Opp. at 11. But the court in *Jedi I* rejected this same argument, holding that the steps of "collecting pre-existing data that is publicly available" and then "processing user data" (essentially the "data mining" step here) was nothing more than "routine data gathering or output steps" to "be performed on a computer using conventional computer activity." *Jedi I*, 2017 WL 3315279 at *8. Similarly, Flexiworld's attempt to distinguish *Walker Digital, LLC* only reinforces the applicability of that case. As Flexiworld points out, the court there found the claim limitation abstract for reciting nothing but "anonymously exchanging information about people" as "historically practiced by matchmakers," just like the Asserted Patents. 66 F. Supp. 3d at 508, 513; Opp. at 11. Flexiworld tries to distance its claims from those in *Walker Digital* by arguing they are not "limited to anonymous communication" but involve the "ability to facilitate anonymous communication." Opp. at 12–13. Flexiworld, however, does not identify anything in the claim language that speaks to facilitation and, even if Flexiworld could do so, "facilitating anonymous communication" is still an abstract idea.

Flexiworld also fails to distinguish the numerous cases finding that result-oriented, functional claims that merely recite a desired result, without specifying ***how*** that result is achieved, are directed to an abstract idea. Br. at 16-17. Flexiworld admits that its claims recite "functional language," but argues that this language "provides the resultant technological improvement." Opp. at 14. Unsurprisingly, the "resultant technological improvement"

Flexiworld points to is just the abstract idea itself: "an automated process for end users to be connected automatically" by "using analytical services based on the information about the users (collected/obtained by the controller)." *Id.* But the Federal Circuit has made clear that the "claim itself . . . must go beyond stating a functional result," *i.e.*, collect user information "using analytical services" and "connect" users "automatically." *Am. Axle*, 967 F.3d at 1302. The claims must "identify 'how' that functional result is achieved by limiting the claim scope . . . to concrete action." *Id.*

Flexiworld's own cited cases do not save its claims from ineligibility. Notably, the claims in Flexiworld's cases change how computers normally operate. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257–58 (Fed. Cir. 2014) (the claimed invention "over[came] a problem specifically arising in the realm of computer networks"; the computer did not "operat[e] in its normal, expected manner"); *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1307–09 (Fed. Cir. 2020) ("patent-eligible improvement" "chang[ed] the normal operation of the communication system itself"); *Patent Armory Inc. v. Choice Hotels Int'l, Inc.*, No. 6:23-cv-00594-ADA (W.D. Tex. Apr. 3, 2025) (claims allegedly were "directed at an unconventional method—namely, an architectural change in computer telephony integrated (CTI) systems"); *Touchstream Technologies, Inc. v. Charter Commc'ns, Inc.*, 2024 WL 5428804, at *3 (E.D. Tex. Dec. 30, 2024) (claims "enhance[d] a computer network's functionality"). Flexiworld's claims, in contrast, recite no such technological improvement and rely entirely on the normal, expected operation of a computer to perform matchmaking.

Flexiworld's reliance on other cases is equally unavailing, as those decisions do not support its position. Flexiworld misreads *Droplets, Inc. v. YAHOO! Inc.*, 2022 WL 20016849, at *5 (N.D. Cal. Aug. 25, 2022) as supposedly standing, according to Flexiworld, for the proposition

that "functional claim language is only indicative of an abstract claim if that language does not provide the technological improvement itself (as compared to describing how each functional step is achieved)." Opp. at 15. In fact, the court in *Droplets, Inc.* found that the claim's "steps sufficiently identify ***how*** to achieve its desired results" by "specif[ying] how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a [bookmark]." *Id.* Flexiworld's asserted claims, unlike those in *Droplets, Inc.*, do not demonstrate "how" the functional result of matchmaking is to be achieved other than through conventional methods (*e.g.*, data mining).

## II. *ALICE* STEP TWO: THE CLAIMS LACK AN INVENTIVE CONCEPT

As Indeed established in its motion, none of the patents' claims contain any inventive concept to save them from a finding of ineligibility. Nothing Flexiworld argues demonstrates otherwise. In fact, Flexiworld's response on Step Two is particularly telling. It contends that this Court cannot decide the motion *now* because of alleged "factual allegations and claim construction issues." Opp. at 17. Yet Flexiworld offers no support for that assertion, identifying neither factual allegations nor claim constructions that would purportedly show the claims contain an inventive concept.

Flexiworld identifies no plausible and specific fact that could add anything "significantly more" to the abstract idea of matchmaking so as to "transform" the claims into eligible subject matter. *Alice*, 573 U.S. at 218, 221; *KOM Software Inc. v. NetApp, Inc.*, 697 F. Supp. 3d 203, 218 (D. Del. 2023). Flexiworld does not dispute that the preexisting components the Asserted Patents rely on to carry out the abstract idea of matchmaking (the "Internet," a "first station" (*e.g.*, a computer), a "second station" (*e.g.*, a second computer), a "packet data network" (*e.g.*, the Internet), and a "controller" (*e.g.*, a computer)) cannot supply the inventive concept. And its

improper insertion of conclusory statements from an expert do not qualify.[3]

Flexiworld's reliance on *Berkheimer v. HP Inc.* is misplaced. 881 F.3d 1360, 1370 (Fed. Cir. 2018). Flexiworld cites *Berkheimer* for the proposition that "whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." Opp. at 17. In *Berkheimer*, however, "***certain claims*** recited non-abstract features of a digital asset management system that the ***specification*** described as unconventional improvements over conventional systems." *BSG Tech. LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (emphases added). The court in *Berkheimer* also found other claims that did not "capture the purportedly inventive concepts" ineligible. *Berkheimer*, 881 F.3d at 1370. Here, there are no "purportedly inventive" concepts in the claims that create a factual dispute.

Flexiworld also spends its brief conclusorily asserting that the "inventions described by the Asserted Patents were years ahead of the release of the Accused Products and their functionalities." Opp. at 18. While Flexiworld describes the "state-of-the-art over twenty years ago," including the idea that "smartphones" were not "ubiquitous," that "Facebook was not founded until 2004," that the "concept of social media" was not "routine or well-understood until long after the priority date of the Asserted Patents," *id.* at 17–18, these observations, even if true, cannot cure the fundamental ineligibility of an abstract idea. Even if it were true that the "inventions described by the Asserted Patents were years ahead" of other technology, *id.* at 18, the Federal Circuit has made clear that, while the court can "assume that the techniques claimed are groundbreaking, innovative or even brilliant . . . that is not enough for eligibility." *SAP*

[3] Flexiworld offers no support for why this Court should credit its expert's conclusory statements that the inventions were not "well-understood, routine, or conventional." Opp. at 20. While it cites to *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 43–44 (Fed. Cir. 2024), there, the Court credited an "expert declaration" that elaborated on claim limitation charts regarding infringement.

*America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018). Nor is it "enough for subject-matter eligibility that claimed techniques be novel and nonobvious in light of prior art." *Id.* "[A] claim for a *new* abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016). "No matter how much of an advance in" communications systems Flexiworld claims, the claimed "advance lies entirely in the realm of abstract ideas," *i.e.*, utilizing pre-existing components of a computer for matchmaking. *SAP America, Inc.*, 898 F.3d at 1163.

Flexiworld's reliance on "Indeed's own patent," Opp. at 18, is completely irrelevant to the *Alice* analysis.[4] In any event, there is no cure to ineligibility to be found in this patent. The patent solves a specific, non-abstract problem via technical innovation: how to de-duplicate job listings in pre-processing, before storing the listings in a search engine database. The contrast could not be more stark with the abstract patents at issue here. Further, Flexiworld's argument that the USPTO found the Asserted Patents patentable is irrelevant in this instant motion, where ineligibility is clear. Opp. at 19–20. Courts are not bound by the USPTO's eligibility determinations. *Sanderling Mgm't Ltd. v. Snap Inc.*, 65 F.4th 698, 705 (Fed. Cir. 2023) ("[C]ourts are not required to defer to Patent Office determinations as to eligibility.").

As a last-ditch effort to delay a decision on the ineligibility of its asserted claims, Flexiworld argues that "claim construction on certain terms" is needed to determine what was well-understood, routine, and conventional. Opp. at 18. But claim construction is not required to find a patent ineligible. *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1374 (Fed. Cir. 2016); Br. at 6–7. Patent eligibility "may be, and frequently has been, resolved on a Rule

[4] As Flexiworld acknowledges, SAC ¶ 70, the patent was actually filed by Simply Hired Inc., which was not affiliated with Indeed until a decade later.

12(b)(6)" motion "before claim construction or significant discovery has commenced." *SAP America Inc.*, 898 F.3d at 1166; *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). Tellingly, Flexiworld does not actually identify a single *disputed* term requiring construction before the present motion can be decided. Instead, Flexiworld asserts that claim limitations 38[b], 38[d], and 38[h] "require construction," but does not identify what construction is required or how it would change the outcome here. Opp. at 19; *see id.* at 18 (arguing that claim construction is needed to "determine the scope of the data mining on data collected by the controller from a history of transactions involving one or more transactions associated with the second party over the Internet"). Flexiworld should not be allowed to use "claim construction" on terms it has failed to identify as a delay tactic. *See, e.g.*, *Clear with Computers, LLC v. Altec Indus., Inc.*, 2015 WL 993392, at *3 (E.D. Tex. Mar. 3, 2015) ("neither party has identified any disputes presently ripe for claim construction" and thus "the Court sees no reason to delay its § 101 ruling while the parties continue to expend significant resources which will not impact or aid the Court in reaching this decision").

## III. DISMISSAL WITH PREJUDICE IS APPROPRIATE

After delaying resolution of this meritless case by twice responding to Indeed's motions to dismiss with amended complaints that introduced improper expert opinions, Flexiworld should now be held to account. No factual allegations or disputes preclude deciding patent eligibility at this stage and any further amendment would be futile, making dismissal with prejudice appropriate. Given the dispositive legal question at hand and to avoid further expenditure of resources on plainly ineligible claims, Indeed respectfully requests that the Court expedite its ruling on the instant motion, consistent with its "inherent power 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630 (1962)).

Dated: April 28, 2025

Respectfully submitted,

*/s/ Brian M. Buroker*

Brian M. Buroker
DC Bar Number 457,158
Wendy W. Cai (*pro hac vice*)
DC Bar Number 90022309
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street N.W.
Washington, D.C. 20036
Phone: (202) 955-8500
Fax: (202) 530-4200

Barry K. Shelton
TX Bar Number 24055029
**SHELTON COBURN LLP**
311 Ranch Road 620 S, Suite 205
Austin, TX 78734
Phone: (512) 263-2165
Fax: (512) 263-2166

*Attorneys for Defendant Indeed, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2025, a true and correct copy of the foregoing was served upon all counsel of record via the Court's CM/ECF system.

*/s/ Brian M. Buroker*

Brian M. Buroker